THE MEREDOSIA LAKE DRAINAGE AND LEVEE DISTRICT *et al.* Appellants, *vs.* FRED EVEMEYER *et al.* Appellees.

*Opinion filed February 16, 1910.*

DRAINAGE—*under amendment of 1909 to Levee act land owners may act as commissioners.* Under the amendment of the Levee act in 1909, providing for a jury to hear the objections to the assessment roll made by the commissioners, the land owners have the benefit of the jury's deliberation on the evidence introduced to show that the assessment roll is unfair or incorrect, and the objection, existing prior to such amendment, to owners of assessed lands in the district acting as commissioners is obviated.

APPEAL from the County Court of Cass county; the Hon. D. N. WALKER, Judge, presiding.

This is an appeal by the commissioners of the Meredosia Lake Drainage and Levee District, and certain petitioning land owners, from a judgment of the county court of Cass county striking from the files the commissioners'

roll of assessments of benefits and damages and dismissing the proceedings for an additional assessment on the lands of said district.

On April 6, 1909, a petition was filed by a majority of the land owners of said district, in which it was averred that the district embraced lands in the counties of Cass and Morgan and was organized by an order of the county court of Cass county on the second of September, 1903, under an act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees," etc., approved May 29, 1879, and the amendments thereto. The petition further averred that in accordance with the plans of the district, levees were constructed to protect the lands from overflow and ditches dug for drainage purposes, and for this work an original assessment of $50,000 and an additional assessment of $11,000 were levied on the lands of the district and approved by said county court; that the proceeds of said assessments had been expended and that they were insufficient to complete the work of the district; that an additional sum of $38,406.38 would be required to accomplish the necessary work to be done, in order to properly drain and protect the lands of the district. The petition prayed that an assessment may be levied on the lands of the district for the above amount, or for such a sum as should be found necessary by the court for the above purpose.

The court set the hearing on the petition for April 23. By agreement it was continued several times, and June 22 an order was entered finding the facts as alleged in the petition and granting the prayer thereof. This order also finds the necessary jurisdictional facts, directs that an assessment not exceeding the sum of $40,778 be levied on the lands of the district, and orders the commissioners of the district to prepare the commissioners' roll of assessments of benefits and damages, and that upon the filing

thereof they give notice, in the manner provided by section 3 of the act under which the district was organized, of the time and place when and where they would appear before the court for the purpose of having a jury empaneled in accordance with section 6 of the act in regard to eminent domain, "and for the hearing before said jury upon all questions of benefits and damages to any of the lands in said district, as provided by an amendment to said act to provide for the construction, reparation and protection of drains, ditches and levees, approved and in force on the 29th day of May, 1909."

On September 9, 1909, the commissioners' roll of assessments of benefits and damages was filed. The court set the hearing for September 20 and caused a jury to be summoned in accordance with the requirements of law in such cases. On the hearing appellees, Evemeyer and Otto, appeared by counsel and entered a motion "to strike from the files and exclude from the jury the commissioners' roll of assessments of benefits and damages signed by W. F. Roegge, Fred Roegge and W. C. Korsmeyer, commissioners of the Meredosia Lake Drainage and Levee District, and filed in this court September 9, 1909, for the reason that the said W. F. Roegge, Fred Roegge and W. C. Korsmeyer are, individually, owners of lands in said district and therefore not competent to make said roll of assessments of benefits and damages against these defendants and objectors." A similar motion, based upon the same grounds, was made by other land owners. It was admitted by counsel for the petitioners that the commissioners of said district were at the time said commissioners' roll was made, and still continued to be, land owners in said district. The court sustained the motion to strike the commissioners' assessment roll from the files and dismissed the proceeding. From that judgment this appeal is prosecuted.

WORTHINGTON & REEVE, for appellants.

BELLATTI, BARNES & BELLATTI, for appellees.

Per CURIAM: The proceedings for the additional assessment were in accordance with the requirements of the Levee act, as amended by the act passed with an emergency clause and approved on May 29, 1909. Previous to the amendment of said act this court held commissioners who owned land in districts organized under the Levee act were not competent to assess benefits, and assessments of benefits made by them were held invalid. (*Union Drainage District* v. *Smith,* 233 Ill. 417; *Vandalia Drainage District* v. *Hutchins,* 234 id. 31.) As the statute existed at the time those decisions were rendered, objections by land owners to an assessment made by the commissioners were required to be heard before the commissioners who made the assessment, and no means was provided for having objections passed upon by a jury or any other tribunal. The court held in the first case above mentioned that to compel an objector to submit the question of the correctness of the assessment to the commissioners who had originally made it, and who, by reason of being land owners in the district, were interested, was compelling him to submit the decision of the controversy to his antagonist as his judge, thereby depriving him of property without due process of law, and was in violation of the constitution. It was also held in that case that the objection to the competency of the commissioners to make the assessment, to be availed of, must be made before the judgment of confirmation, or it would be deemed to have been waived. That case was followed in *Vandalia Drainage District* v. *Hutchins, supra.* In the latter case the court pointed out the distinction between the competency of commissioners who were land owners, under the Farm Drainage act and under the Levee act, and said, in substance, that the reason why, under the former act, it was held that commissioners who owned lands in the district might classify them, annex territory to the dis-

trict and perform other acts as such commissioners without violating any constitutional right of an objecting land owner, was because the objector was given the right of appeal from the findings and orders of the commissioners to the county court, where the objections could be heard and passed upon by a jury.

The amendment of May 29, 1909, to the Levee act, authorizes the commissioners, after the district is organized, to procure right of way for the proposed ditches and to make out an assessment roll of benefits and damages. Upon the filing of this assessment roll with the clerk of the court, notice is required to be given of the time and place the commissioners will appear before the court in which the petition was filed, "for the purpose of having a jury empaneled in accordance with the provisions of section 6" of the Eminent Domain act, "and for the hearing before said jury upon all questions of benefits and damages to any of the land in said district." When the jury is empaneled the assessment roll as made by the commissioners is to be presented as their claim against the several land owners and tracts of land and "shall make out a *prima facie* case for the commissioners." All persons interested are authorized to present their case to the jury and offer any competent evidence as to the amount of benefits their land will receive or as to the damages thereto. The jury are required to examine the lands and make out a verdict which shall show the benefits assessed against each tract of land and the amount of damages allowed, if any. In arriving at their verdict they are required to take into consideration their view of the premises as evidence, and consider it together with the testimony offered during the trial, and upon the verdict being confirmed by the court it is to be spread upon the records, and the judgment and verdict are made a lien upon the lands assessed. It will be seen these provisions of the amendatory act afford objecting land owners the right to have the assessment made by the com-

missioners passed upon by a jury before it becomes final and a lien upon the land. This, it would seem, as effectually obviates the constitutional objections as do the provisions of the Farm Drainage act referred to.

Counsel for the appellees say that both the original and amendatory acts provided for the appointment of three competent persons as commissioners, and that as land owners in the district were held under the original act to be incompetent, they must necessarily be incompetent under the amendatory act. In the cases above referred to, the incompetency of land owners to act as commissioners was not held to result alone from the fact that they were land owners, but because, in addition to being such land owners, they were required to pass upon objections to the assessment made by them, and it was held the objector was denied the due process of law guaranteed him by the constitution. Under the amendatory act the assessment made by the commissioners is required to be presented to a jury as their claim of what each tract of land should be assessed, and the objector is authorized to introduce any competent proof to show the unfairness or incorrectness of the assessment. This meets the objections pointed out to the original act.

We are of opinion, therefore, the court erred in striking the assessment roll from the files and dismissing the petition.

The judgment of the county court is reversed and the cause remanded to that court, with directions to proceed to empanel a jury to hear the objections in accordance with the provisions of the act as amended by the act of May 29, 1909.

*Reversed and remanded, with directions.*