The Spring Creek Drainage District, Appellee, vs. The Elgin, Joliet and Eastern Railway Company et al. Appellants.

*Opinion filed February 25, 1911—Rehearing denied April 6, 1911.*

1. Drainage—*authority of district to assess city for benefits to streets and alleys.* Section 55 of the Levee act, as amended in 1909, (Laws of 1909, p. 193,) confers express authority upon a levee drainage district to make an assessment against a city on account of benefits to its streets and alleys within such district, and the confirmation of such assessment amounts to a judgment against the city. (*City of Joliet v. Spring Creek Drainage District,* 222 Ill. 441, explained.)

2. Same—*a city has power to levy tax to pay drainage assessment for benefits to streets—mandamus.* Authority to levy and collect a tax to pay a levee drainage assessment for benefits to the streets and alleys of a city is conferred by sections 2 and 3 of article 7 of the Cities and Villages act, and the drainage district may, by *mandamus,* compel the city to exercise such authority.

3. Same—*what is not a valid objection to levee drainage assessment against city.* The fact that the Levee act has not provided a method for the levy and collection by a city of a tax to meet a drainage assessment for benefits to the streets and alleys of the city, nor designated the particular fund out of which the assessment shall be paid, is not a valid objection to such assessment.

4. Same—*drainage assessments cannot be made a lien except upon property benefited.* Under the constitution the authority of the legislature to authorize the making of drainage improvements by special assessment is limited to property within the district which is benefited by the improvement, and such assessments can not be made a personal liability of the owners of the property against which the assessments are made.

5. Same—*provision of Levee act making drainage assessment a lien on property of railroad is invalid.* The second proviso to section 55 of Levee act, as amended in 1909, (Laws of 1909, p. 193,) in so far as it attempts to create a lien upon all the property of railroads for the payment of drainage assessments against railroad property, and which provides that executions may issue as upon a judgment and have a like lien upon the personal property of the railroad, is unconstitutional and void, but its invalidity does not affect the remainder of that section nor the other portions of the act.

6. Same—*sections 17b and 18 of Levee act, as amended, are valid in so far as they provide a method for ascertaining benefits.*

Sections 17*b* and 18 of the Levee act, as amended in 1909, in so far as they provide a method for ascertaining benefits where no question of damages is involved, are not in contravention of section 13 of article 2 and section 14 of article 11 of the constitution, which relate exclusively to the taking or damaging of property for public use, and which contain no limitation upon the power of the legislature to provide methods for ascertaining the benefits to property assessed for drainage improvements. (*Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310, distinguished.)

7. Same—*section 17b of Levee act does not require jury to assess an arbitrary sum, regardless of benefits.* Section 17*b* of the Levee act, as amended in 1909, does not, by requiring the jury to return a verdict which *shall* produce the total sum of the estimated cost of the proposed work and the proceedings incident to the same, require the jury to assess an arbitrary sum regardless of benefits, since the word "shall," as so used, may properly be given the meaning of "may," and is a directory and not a mandatory provision.

8. Same—*jury cannot assess total amount of estimated cost unless the benefits equal or exceed such sum.* Section 17*b* of the Levee act, as amended in 1909, when properly construed, authorizes the jury to return a verdict which shall equal the total sum of the estimated cost of the proposed work and the proceedings incident to the same only when the benefits to the lands in the district shall equal or exceed such sum.

9. Same—*assessment cannot be levied to pay past indebtedness of district.* An assessment cannot be made by levee drainage commissioners to pay past indebtedness, and if any portion of the assessment is made for such purpose it is to that extent null and void; but if the county court, in its order granting the prayer of the petition, finds that the assessment is made for the payment of future obligations and not for obligations previously incurred, it will be presumed, in the absence of a bill of exceptions, that the evidence heard by the court justified such finding.

10. Same—*district has no authority to incur liabilities or debts in excess of funds on hand.* Drainage commissioners, in letting the contracts for the initial construction of the improvement, have no power to contract for any work in excess of that which can be paid for out of the original assessment, and as to any excess the contracts are *ultra vires* and void and cannot be enforced either against the contractors or the district, nor can a subsequent assessment be levied to pay for such excess.

11. Same—*when assessment is not invalid as for past indebtedness.* Drainage commissioners have a right, in contracting for excavation and concrete work by the cubic yard, to contract for as

many cubic yards as can be paid for, at the contract price, out of the funds on hand, and hence if it appears that at the time an additional assessment is asked for the contractors have not completed more work than can be paid for out of the funds the district then has on hand, the additional assessment is not levied to pay past indebtedness though it is to be used to pay for completing the work.

12. SAME—*real estate purchased by commissioners may be considered in estimating fund on hand.*  In determining whether the liabilities of a levee drainage district exceed the funds it has on hand from the original assessment at the time a petition for an additional assessment is filed, it is proper to add to the available assets of the district the fair value of land to which the district obtained title when purchasing the right of way for its ditch, even though the land is not necessary for any purpose of the district and though the commissioners may not have had power to acquire it.

13. SAME—*fact that expenditure for a certain purpose exceeds amount estimated therefor is not a wrongful diversion.*  Under section 37 of the Levee act the commissioners are authorized to use the money arising from the collection of the assessments for any legitimate purpose of the district under the direction and supervision of the court, and the fact that the commissioners expend for certain purposes more than the sum which was specified in the estimate for such purposes does not constitute a wrongful diversion of the fund.  (*Vandalia Drainage District* v. *Hutchins,* 234 Ill. 31, distinguished.)

14. SAME—*a drainage district has implied powers essential to carry out the powers granted.*  A drainage district necessarily possesses the implied powers necessary to carry out the express powers granted.

15. SAME—*all expenses of district must be paid out of money collected by a special assessment.*  The only method provided by statute by which a drainage district can acquire funds is by assessment upon the lands in the district, and all expenses which the district is authorized to incur must therefore be paid out of money collected by this method.

16. SAME—*commissioners may include in estimate a sum for collecting delinquent assessments.*  In estimating the amount necessary to be raised by a drainage assessment the commissioners have a right to consider the probable expense of collecting delinquent assessments in the manner provided by law, and may include a sum for that purpose in their estimate of the amount necessary to be raised by an additional assessment to complete the work and pay all incidental expenses.

17. SAME—*parties desiring accounts of the commissioners to be more specifically itemized should apply to court.* Parties to a proceeding for an additional drainage assessment who desire the commissioners' accounts of their receipts and expenditures to be more specifically itemized should request the court to require the commissioners to file a more specific account, and in the absence of such a request they cannot complain, on appeal, that the accounts filed were not itemized as required by law.

18. SAME—*court's findings of fact upon granting prayer of petition are binding unless modified before confirmation.* A finding by the court, in its order granting the prayer of a petition for an additional assessment, that the assessment is made to pay future obligations is merely interlocutory and subject to be modified or vacated before the entry of the judgment of confirmation, but until modified or set aside it is binding upon the parties; and the court cannot be required to re-try the question at some subsequent stage in the proceedings, in absence of any showing of good cause why objection was not interposed and evidence presented at the hearing on the petition. (*Ahrens* v. *Drainage District,* 170 Ill. 262, and *Vandalia Drainage District* v. *Hutchins,* 234 id. 31, distinguished.)

19. SAME—*court does not lose jurisdiction of proceeding upon sustaining objections to assessment roll.* Upon sustaining objections to an assessment roll and vacating and setting aside the assessment against all the lands of the district the county court does not lose jurisdiction of the proceeding but may grant leave to the petitioner to file a new assessment roll. (*Claussen Park Drainage District* v. *Daily,* 239 Ill. 428, distinguished.)

20. SAME—*land owners of a district may act as commissioners under amendment of 1909.* Under the Levee act, as amended in 1909, it is not now a valid objection to a levee drainage assessment that the commissioners are owners of lands in the district which are assessed for the work. (*Meredosia Lake Drainage District* v. *Evemeyer,* 244 Ill. 115, adhered to.)

21. SAME—*the constitution does not limit drainage assessment to lands.* The constitutional amendment of 1878, authorizing the enactment of drainage legislation, does not limit such legislation to special assessments for drainage purposes upon land or real estate but authorizes special assessments upon property benefited.

22. SAME—*constitution authorizes legislature to make a street railway liable to drainage assessment.* A street railway is "property" within the meaning of the drainage amendment to the constitution, and the legislature has the same authority to provide that street railways shall be subject to drainage assessment as it has to authorize the special assessment of a street railway for the purpose of a local improvement.

23. Same—*section 55 of Levee act authorizes assessment of a street railway.* Section 55 of the Levee act, as amended in 1885, authorizing a drainage assessment to be levied against the property of "any public or corporate road or railroad" benefited by the construction of ditches, drains or levees, authorizes the assessment of a street railway within the district for its just share of the benefits to be derived from the work of the district.

24. Same—*every owner of assessed property is injured by the omission of property liable to assessment.* Every person whose property is assessed for benefits from a drainage improvement is injured by the omission to assess other property liable to assessment, and he is entitled to prove, upon application for a judgment confirming the assessment, that property omitted from assessment will be benefited.

25. Same—*Levee act does not authorize assessment of property of telegraph, telephone and gas companies.* The language of the Levee act does not authorize the levy of a drainage assessment against the poles, wires, pipes, fixtures and other like property of telegraph, telephone, electric light and gas companies.

26. Same—*railroad company cannot object that district has not obtained consent of highway authorities to do its work.* A railroad company has no standing to object to a levee drainage assessment upon the ground that the district has not obtained permission from the highway commissioners to construct its ditch and walls in and upon a certain highway.

27. Same—*verdict of jury as to benefits is entitled to weight given the verdict in a condemnation case.* Where the jury, in a proceeding by a levee drainage district to levy an additional assessment, has heard the evidence and viewed the premises, its verdict fixing the amount of benefits is entitled to as much weight in a court of review as a verdict in a condemnation case, and will not be set aside solely because the testimony of the witnesses preponderates in favor of the appellant.

28. Statutes—*when word "shall" may be construed to mean "may."* The word "shall," when used in a statute, may be held to be directory, merely, and as being synonymous with "may," where such a construction is rendered necessary by the evident intention of the legislature and no right or benefit to anyone depends upon its being given an imperative meaning.

Cooke, Farmer and Dunn, JJ., dissenting.
Vickers, C. J., specially concurring.

Appeal from the County Court of Will county; the Hon. Arthur W. Deselm, Judge, presiding.

Knapp & Campbell, O'Donnell, Donovan & Bray, and John R. Cochran, for appellant the Elgin, Joliet and Eastern Railway Company.

O'Donnell, Donovan & Bray, for appellant the Michigan Central Railroad Company.

Snapp & Heise, for appellant the Chicago, Rock Island and Pacific Railway Company.

Dan R. Burke, for appellant the city of Joliet.

S. J. Drew, for appellee.

Per Curiam: This is an appeal by the Elgin, Joliet and Eastern Railway Company, the Michigan Central Railroad Company, the Chicago, Rock Island and Pacific Railway Company and the city of Joliet from a judgment of the county court of Will county confirming a drainage assessment against lands of the appellant companies and the streets and alleys of the city within the boundaries of the Spring Creek Drainage District. The drainage district was organized under the Levee act, by an order of the county court of Will county, in March, 1903, to furnish to the lands in the district protection from the overflow waters of Spring creek, a small stream partly within and partly without the city of Joliet, and an original assessment of $165,-000 against the lands in the district was confirmed by the county court on July 29, 1904. The plans provided for the deepening, widening and straightening of Spring creek and the construction of concrete walls on the sides thereof, and the work was divided into two principal divisions, designated as the "main channel" and the "north branch." A contract for excavating the main channel, except those portions extending through the lands of the appellant railroad companies, was let to one Robert Shannon on September 17, 1907, the price fixed by the contract being forty-

seven cents per cubic yard. On the same day a contract was entered into with one Melvin Blain to construct the concrete walls on the sides of those portions of the main channel covered by the Shannon contract, the price to be paid therefor being $5.70 per cubic yard. Contracts were also made with each of the appellant railroad companies to excavate the ditch and construct the walls, according to the plans and specifications of the district, across the lands of such railroad company in partial satisfaction and payment of the assessment confirmed against its lands, the balance of the assessment against such lands being satisfied by the release by the railroad company of a right of way through its lands for the ditch and walls of the district. On February 15, 1909, the drainage district filed its petition in the county court of Will county for an additional assessment of $50,000 against the lands in the district, alleging therein that $56,323.63 was required to complete the main channel and for incidental expenses and $30,000 to complete the north branch, and that the resources of the district consisted of $28,323.63 cash, after deducting from the amount on hand the amount due contractors for work performed and real estate valued at $8000. The subsequent proceedings, which, so far as material to the questions presented for our determination, will be hereinafter set out, resulted in a judgment confirming an additional assessment of $10,700 against lands of the Elgin, Joliet and Eastern Railway Company, $1900 against lands of the Michigan Central Railroad Company, $1474 against lands of the Chicago, Rock Island and Pacific Railway Company, and $3200 against the streets and alleys of the city of Joliet within the district, and this appeal is prosecuted from that judgment.

Some of the questions presented upon this appeal relate to rulings of the court affecting all the appellants, while others relate to rulings affecting only one or a part of them.

*First*—The city of Joliet contends that the assessment against it on account of benefits to the streets and alleys within the district is not authorized by the statute and is consequently void, and bases this contention entirely upon the case of *City of Joliet* v. *Spring Creek Drainage District,* 222 Ill. 441, wherein it was held, upon the authority of *Drainage Comrs.* v. *Village of Cerro Gordo,* 217 id. 488, that section 55 of the Levee act, as it existed prior to the amendment of May 29, 1909, did not authorize an assessment against a city or village on account of benefits to streets and alleys. The city contends that it was there held that the failure of the Levee act to provide any method by which to compel a city to levy and collect a tax to meet a drainage assessment was a fatal objection to an assessment against it on account of benefits to its streets and alleys. While some of the language used in the opinion in that case may be susceptible of the construction which the city has placed upon it, yet the ground upon which the decision was based clearly appears to be that section 55 of the Levee act made no express provision for an assessment against a city on account of benefits to streets, and no such provision could be implied from the use of the words "public roads" or "township roads" in the section, because the section required the commissioners of highways to include the assessment against the public roads or township roads in their levy for road and bridge purposes but made no provision for the levy and collection of taxes by a city or incorporated village with which to meet such assessment, and it was said: "Nowhere in section 55 of the Levee act are streets of an incorporated village or city mentioned, and the provisions made by said section for the collection of the assessments made against 'public roads' or 'township roads,' if it were otherwise doubtful whether they [streets of an incorporated city or village] were intended to be included in the act, make it clear there was no such intention."

On May 29, 1909, the legislature amended said section 55 so that it now provides that when the proposed work "drains or levees or proposes to drain or levee, either in whole or in part, any public or corporate road or railroad, or the streets and alleys of any municipal corporation, so as to benefit any of such roads, * * * the commissioners shall apportion to the county, State, or free turnpike road, to the township, if a township road, to the company, if a corporate road or railroad, or to the municipal corporation in the case of streets and alleys, such proportion of the cost and expenses thereof as to private individuals, * * * and the said jury shall view and examine such road, railroad, streets and alleys, and shall proceed to assess the damages and benefits in like manner as to the lands of individuals." Express authority to make an assessment against a city on account of benefits to its streets and alleys within the district is therefore conferred by the amended section, and the confirmation of such assessment amounts to a judgment against the city for the amount of the assessment. The authority to levy and collect a tax for the payment of this judgment is conferred upon the city by sections 2 and 3 of article 7 of the act to provide for the incorporation of cities and villages, and the drainage district may, by *mandamus,* compel the city to exercise such authority. The fact that the Levee act has not provided a method for the levy and collection of a tax to meet the drainage assessment, or has not designated the particular fund out of which the assessment shall be paid, is not a valid objection to the assessment against the city of Joliet.

*Second*—It is urged by appellants that the assessment was levied to pay past indebtedness and to replace funds illegally expended by the district. If any portion of the assessment was made to pay past indebtedness, the assessment to the extent that it was levied for that purpose was unauthorized and void. (*Winkelmann* v. *Drainage District,* 170 Ill. 37; *Ahrens* v. *Drainage District,* 170 id. 262; *Van-*

*dalia Drainage District* v. *Hutchins*, 234 id. 31; *Drainage Comrs.* v. *Kinney*, 233 id. 67; *Schafer* v. *Gerbers*, 234 id. 468.) The record, however, fails to show that this assessment, or any portion thereof, was levied to pay indebtedness already incurred, and the order of the county court granting the prayer of the petition for the additional assessment contains a finding of fact "that the said sum of $50,000 asked for herein is for the payment of future obligations and not for obligations previously incurred." The Elgin, Joliet and Eastern Railway Company was the only one of the appellants that appeared at the hearing upon the petition, and the evidence taken at that hearing was not preserved by bill of exceptions and is not in the record. It must therefore be presumed that the evidence heard by the court justified the finding that the assessment was for the payment of future obligations and not for obligations previously incurred.

The exhibits attached to the petition filed February 15, 1909, purported to contain a statement of the receipts and disbursements of the district from the time of its organization to September 21, 1908, and the allegations of the petition with reference to the cash on hand and the estimate of the amount necessary to complete the main channel were based on that statement. Thereafter, on March 22, 1909, and before the hearing upon the petition, the district filed an amendment to the petition, consisting principally of an itemized statement of the receipts and disbursements from the organization of the district to February 26, 1909. Appellants contend that it appears from the amended petition and the exhibits attached thereto and made a part thereof, that the liabilities of the district exceeded the assets and that a part of the assessment was levied to meet the deficiency, and that it was not necessary to preserve the evidence in order to present this question for review. In order to sustain their contention, appellants argue that inasmuch as the contracts with Shannon and Blain included all the

work necessary for the completion of the main channel except those portions upon the railroad lands, and inasmuch as it appears from the financial report and estimates attached to the petition that at least $19,051.28 of the $50,-000 additional assessment was required to complete the work covered by these contracts, it therefore appears from the record that at least $19,051.28 was levied to pay liabilities previously incurred by the district, and the case of *Culbertson* v. *City of Fulton,* 127 Ill. 30, is cited as conclusively settling the question in accordance with appellants' contention. In the case referred to, it appeared that the city of Fulton had made a contract with an engine company for the construction of a system of water-works and had agreed to pay therefor $11,619 at or during the completion of the work as provided in the contract and upon its acceptance by the council, the contractor having the option to receive payments thereon as the work progressed and was accepted by the city. Thereafter the city issued bonds aggregating $10,000 which it proposed to deliver to the engine company as part payment, and passed an ordinance levying $1700 for the completion of the payment of the contract price for the construction of the system of water-works. Certain tax-payers of the city filed a bill for an injunction to restrain the city from accepting the water-works and from issuing the bonds and to restrain the collector from collecting the $1700 tax, alleging that the $11,619 indebtedness exceeded the constitutional limit. When the case was heard in the circuit court it appeared that the engine company had performed its part of the contract and that the system was ready for acceptance by the city. It also appeared that $11,619 was $1165.95 in excess of five per cent of the value of the taxable property in the city as ascertained by the assessment for State and county taxes for the year 1886. The contract with the engine company was made August 15, 1887, and the State Board of Equalization did not determine the equalized

value of the assessable property in the city for the year 1887 until October 1, 1887. Apparently it was contended by the city that it did not become indebted for the $11,619 until the completion of the work, which was after October 1, 1887; that the value of the taxable property in the city should be ascertained by the assessment for the year 1887, and that when determined by the latter assessment the $11,619 was not in excess of the constitutional limit. In considering this question the court used the following language, which is relied upon by appellants as decisive of the question now under consideration: "By entering into the contract on August 15, 1887, the city 'became indebted.' The obligations entered into by the terms of the contract constituted such an indebtedness as is contemplated by the language of the constitution. It cannot be said that the indebtedness did not come into being until the work was completed and accepted by the city. The city bound itself to pay for the work when it should be completed, and could be compelled to do so if the work should be done according to the contract." Obviously, the statement that the city could be compelled to pay for the work when completed was a general statement, not intended to apply to the facts in that particular case, but only intended to state the effect of such a contract where a city incurs a liability within the constitutional limit, the decision of the case being, that inasmuch as section 12 of article 9 of the constitution prohibited the city from becoming indebted in any manner or for any purpose to an amount in the aggregate exceeding five per cent on the value of the taxable property therein, the indebtedness was void to the extent of the amount of the excess over the constitutional limit.

If a city is prohibited from contracting a debt above a certain amount, then a contract by which it incurs the liability is necessarily *ultra vires* and void as to such excess, and consequently cannot be enforced against either party to the contract. Applying this principle to the contract of

a drainage district, it follows that if the district has no authority to incur liabilities or debts in excess of the funds on hand, any contract by which it incurs such liability or debt is *ultra vires* and void as to such excess, and consequently cannot be enforced against the district or against the other party to the contract. The decision in *Winkelmann* v. *Drainage District, supra,* being the first case in which we held that an additional assessment could not be levied to pay outstanding liabilities of the district, was placed on the ground that the Drainage act provides "a particular mode in which, alone, the district is authorized to incur any indebtedness," and after setting out certain provisions of the act it was said: "These provisions of the act clearly indicate that the commissioners have no power to contract debts over and above the amount of the assessment. * * * The prohibition against the contracting of the indebtedness before the making of the assessment to pay it is further apparent from the fact that the only mode indicated in the statute by which an indebtedness may be created is the borrowing of a certain percentage of the amount of assessment unpaid at the time of borrowing. Necessarily, therefore, the assessment precedes the contracting of the indebtedness. To create an indebtedness the means provided by the statute are the only means which can be resorted to. Inasmuch, therefore, as the provisions of the statute imply a want of power in drainage districts to create debts in excess of assessments or funds on hand," such excess can by no possibility be a lien on any of the lands in the district. The other cases decided by us to the same effect are all based on the want of power in commissioners to incur indebtedness against the district in excess of the assessment levied, or, in other words, the want of power in the commissioners to make contracts creating such indebtedness.

The contracts with Shannon and Blain, although they included all the work necessary for the completion of the

main channel except those portions upon the railroad lands, did not fix any sum as the total compensation to be paid the contractors for the work. Both contracts fixed the compensation at a certain sum per cubic yard. The commissioners had the power to contract for as many cubic yards as could be paid for out of funds on hand at the rate fixed by the contract, and to that extent the contracts were valid. They had no power to contract for any work in excess of that which could be paid for out of the original assessment, and as to such excess the contracts were *ultra vires* and void and could neither be enforced against the contractors nor against the district. Had the contractors performed any work under the contracts in excess of that for which the commissioners had authority to contract, no assessment could be levied to pay for such work. It appears from the petition and exhibits, however, that there were sufficient funds remaining from the original assessment to pay the contractors for all work that had, at the time the petition was filed, been done by them. It does not, therefore, appear from the record that the additional assessment was levied to pay for work already done, and as no liability can be created by a void contract, it necessarily follows that the additional assessment, in so far as it was required to complete the main channel, was not levied to pay a past indebtedness or a liability already incurred.

The amended petition discloses the fact that on February 26, 1909, the district had cash on hand amounting to $9096.57 and that there was then due contractors for work done $11,530.57, and appellants contend that the difference between these two amounts represented an indebtedness which formed a basis for a portion of the additional assessment. It appears from the amended petition, however, that in addition to the cash on hand the district had, in purchasing the right of way for a portion of its ditch, obtained the title to certain real estate not necessary for right of way purposes, which was valued by the commis-

sioners at $8000 and was included in their report as an asset of the district. Nothing appears from the record to show that the valuation placed on this real estate by the commissioners is incorrect, and it must therefore be presumed, in considering the question now before us, that the real estate owned by the district and not necessary for right of way purposes is of the value of $8000. This sum added to the amount of cash on hand made the available assets of the district $17,096.57, or $5566 more than the amount due contractors for work done.

Appellants contend, however, that the real estate held by the district cannot be considered in determining whether the district had incurred liabilities in excess of funds on hand, because the district had no power, under the statute, to purchase real estate. Conceding the lack of authority on the part of the commissioners of the district to acquire real estate by purchase, it does not follow that because the commissioners have improperly expended the money of the district for that purpose the money and the real estate are both lost to the district. It was proper to take into consideration the real estate owned by the district in determining whether the liabilities exceeded the funds on hand and whether any part of the additional assessment was for the purpose of paying indebtedness previously incurred.

*Third*—When the petition was filed, on February 15, 1909, and when the order granting the prayer of the petition was entered, on March 31, 1909, the statute did not authorize an assessment against a municipality on account of benefits to streets and alleys, and in the original assessment roll made by the commissioners and afterwards set aside by the court no assessment was made against the city of Joliet or against the streets and alleys of the city. When the commissioners made their second roll of assessments of benefits under the order entered July 15, 1909, the assessment of $3200 was spread against the city on account of benefits to the streets and alleys of the city within the dis-

trict, such assessment being authorized by the amendment of May 29, 1909, to the Levee act.  On September 20, 1909, the city entered its special and limited appearance in the cause for the purpose of making its motion to dismiss the petition, to vacate all orders and proceedings thereon and to vacate and annul the assessment spread against it by the commissioners, one of the grounds in support of said motion being that the assessment was sought to be levied to pay liabilities already incurred, and another being that a portion of the original assessment levied for construction purposes had been diverted by the commissioners to other purposes.  A hearing was had before the court upon this motion, and the city contended that inasmuch as it was not a party to the proceedings when the order granting the prayer of the petition was entered, it had a right, at the hearing upon this motion, to introduce evidence in support of its objections to the levying of the additional assessment. This contention of the city was sustained and the court admitted the evidence offered by the city.  This evidence wholly failed to show that the money to be derived from the additional assessment, or any part thereof, was required to pay past indebtedness.  It did establish, however, that the estimate for excavation and concrete walls, upon which the original assessment was based, was $142,869 and the estimate for all other expenses $22,131.

It appeared from the reports attached to the petition and amendment thereto, that the district had expended for purposes other than excavation and concrete walls $65,-805.13, and it is contended that there was therefore a wrongful diversion of $43,674.13 from the purpose for which that amount was levied, and that the district has no authority to levy an additional assessment to replace that amount in the fund from which it had been wrongfully diverted.  The case of *Vandalia Drainage District* v. *Hutchins,* 234 Ill. 31, is relied upon in support of this contention. In that case the drainage district sought to levy an addi-

tional assessment, including $14,000 for past indebtedness, and in order to meet the objection that the district could not incur indebtedness and then levy an additional assessment to pay the same, the district was contending that if some portion of the money raised in the original assessment for construction should be diverted and used to pay incidental expenses of the district, such diversion would not affect the right of the commissioners to make valid contracts for construction to the full amount of the original assessment for that purpose. It was held that this contention did not meet the objection, and that the assessment, in so far as it was levied to pay past indebtedness, was unauthorized and void. It was not there held, as appellants assume, that the only part of an assessment that can be legally expended by the district for any particular purpose is limited to the amount specified for that purpose in the estimate upon which the assessment is based. Section 37 of the Levee act is directly contrary to appellants' contention. It provides that the "commissioners may use money arising from the collection of assessments or coming into their hands, as such commissioners, for the purpose of compromising suits and controversies arising under this act, and in the employment of all necessary agents and attorneys, in organizing said district, and for conducting other proceedings, in law or in equity, for the same, and for the purpose of constructing or repairing or maintaining any ditch, ditches, drains, levee or levees within said district, or outside of said district, necessary to the protection of the lands and complete drainage of the same within said district: *Provided,* that the commissioners shall use such money under the direction or approval of the court." The estimates, the total of which fix the amount of a drainage assessment, especially those for expenses other than construction, cannot be made with mathematical precision. Various circumstances may arise which require the expenditure of the funds of the district for purposes which

could not be reasonably anticipated when the estimates were made. The commissioners are authorized to use the money arising from the collection of assessments for any legitimate purpose of the district, under the direction or subject to the approval of the court, and if their estimate of the entire amount necessary for all purposes proves inadequate, the statute, recognizing the possibility of such a contingency, authorizes the county court to order the levy of an additional assessment to complete the work and meet the incidental expenses.

The fact that a larger amount was expended for purposes other than construction than was originally estimated would be necessary for those purposes was not a valid objection to the additional assessment, and the court did not err in denying the motion of the city to dismiss the petition and to vacate the assessment spread against it in the commissioners' second roll of assessments of benefits.

*Fourth*—The appellant railroad companies contend that no additional assessments could be made against their lands because by contracts between them and the drainage district, under which they had constructed upon their lands the ditches and walls of the district, their lands had been relieved and discharged of the original and all subsequent assessments. These contracts were introduced in evidence by the railroad companies at the hearing before the jury but do not support their contention. They clearly relate only to the original assessment, which was satisfied and discharged by the release of a right of way across the railroad lands and the construction of the work of the drainage district by the railroad companies thereon, and constitute no defense to an additional assessment against those lands.

*Fifth*—The amendment to the petition discloses the fact that $1000 of the additional assessment was levied to pay the estimated cost of collecting delinquent assessments, and appellants contend that there is no authority whatever for including in an additional assessment any sum for

that purpose. A drainage district necessarily possesses the implied powers essential to carry out the express powers granted. The power is granted to levy assessments, and the act provides that if these assessments are not paid to the commissioners or treasurer of the district, they shall, on or before the tenth day of March next after becoming payable, be returned to the county collector, who is required to collect the same or enforce their collection in the same manner as provided for the collection of State and county taxes. By section 21 of the act concerning fees and salaries the county collector in counties of the second class is allowed a commission of two per cent on all money collected by him and paid over to the proper officer. The only method provided by statute by which a drainage district can acquire funds is by assessment upon the lands in the district. All expenses which it is authorized to incur must be paid out of money collected by this method. The legislature has authorized the county collector to retain two per cent of the delinquent assessments collected by him, and the commissioners necessarily have authority to take that probable expense into consideration in making up their estimate of the amount that should be levied in order to obtain the money necessary to complete the work of the district and pay all incidental expenses. This conclusion is supported by *Village of Hyde Park* v. *Ingalls*, 87 Ill. 11, and *Baltimore and Ohio Southwestern Railroad Co.* v. *People*, 200 id. 541, in which it was held proper to include in a levy of taxes for municipal purposes an amount estimated as necessary to pay the cost of collection.

*Sixth*—It is contended that the petition for the additional assessment was not accompanied by such an "itemized statement of accounts made by the commissioners under oath, showing the moneys received by the district and the manner in which they have been expended," as is required by the statute. The original petition was accompanied by a statement purporting to show the total amounts

received and paid out between certain dates, from the organization of the district to September 22, 1908, according to detailed reports, theretofore made to the court, which reports, then on file in court, were referred to for greater certainty.   The exhibits attached to the amendment to the petition consisted of reports and estimates, purporting, among other things, to show the moneys received and paid out by the district from its organization to February 26, 1909, and these reports were itemized to a certain extent. The statement of accounts was itemized, but not as minutely as it might have been.   All of the appellants except the Elgin, Joliet and Eastern Railway Company and the city of Joliet were defaulted at the hearing upon the petition, and are therefore not in a position to raise this question. As to the appellants who were not defaulted, if they did not consider the accounts filed as sufficiently itemized they should have requested the court to compel the commissioners to file a more specific statement of accounts.   In the absence of such request they are not in a position to complain of this alleged error.

*Seventh*—None of the appellants appeared at the hearing upon the petition except the Elgin, Joliet and Eastern Railway Company, and, as above stated, all of the appellants except that company and the city of Joliet, which was not then a party, were defaulted.   The order granting the prayer of the petition was entered March 31, 1909, and the commissioners were by that order directed to make the assessment of benefits in lieu of a jury.   On May 19, 1909, the commissioners returned into court their assessment roll and fixed upon June 9, 1909, as the time for the correction thereof.   All of the appellant railroad companies appeared at the time so fixed and objected to the assessments against their lands on the ground that each of the commissioners was the owner of lands within the district and was therefore incompetent to make the assessment.   Thereafter, on June 19, 1909, to which time the hearing upon objections

had been continued, the court sustained the objection in-
terposed by the appellant railroad companies and vacated
and set aside the assessments levied against their lands.
In the meantime the legislature had, on May 29, 1909,
amended certain sections of the Levee act, including sec-
tion 37, under which the petition was filed, thereby requir-
ing all assessments of benefits to be made by a jury. On
July 15, 1909, upon the petition of the district and upon
proof of service of notice of the intended application upon
the appellant railroad companies, and on account of said
amendment to the Levee act, the court entered an order
vacating and setting aside that portion of the order en-
tered March 31, 1909, directing the commissioners to make
the additional assessment, and setting aside the assessment
roll filed in court on May 19, 1909, and granting leave to
the petitioner to file a second assessment roll under the pe-
tition, to be known as "commissioners' second roll of as-
sessments of benefits." On the same day the commissioners
filed with the clerk and presented to the court their second
roll of assessments of benefits, and the court thereupon or-
dered the clerk of the court to cause a jury to be drawn in
accordance with the provisions of section 6 of the Eminent
Domain act, to report to the court on July 26, 1909, to hear
and determine and separately assess the benefits accruing
to each tract, lot, piece or parcel of land, highways, streets
and alleys within the district. Thereafter the appellant rail-
road companies filed their respective motions to vacate the
order entered March 31, 1909, granting leave to levy the
additional assessment and for a rehearing upon the peti-
tion, assigning as a reason therefor that by the amendments
made to the Levee act since the entry of the order, certain
objections, which before the amendments could have been
made at the hearing upon the assessment roll, were required
to be interposed at the hearing upon the petition if land
owners desired to avail themselves of such objections. The
motions of the appellant railroad companies were denied,

and they contend that they were thereby deprived of a hearing on the objection that the assessment was levied to pay past indebtedness. We have hereinbefore considered this objection as presented by the petition and exhibits thereto, but the appellant railroad companies contend that they were deprived of the benefit of having the evidence considered which they might have produced in support of the objection.

The Elgin, Joliet and Eastern Railway Company interposed objections at the hearing upon the petition. These objections did not include one questioning the purpose for which the assessment was sought to be levied. The other appellant railroad companies were defaulted, thereby admitting as true the allegations of the petition. From these allegations it appeared that the entire amount of the additional assessment was required for future work and expenses and that no part thereof was required to pay past indebtedness, and the order of court so found. None of the appellant railroad companies were therefore in a position to thereafter contend that these allegations of the petition were untrue and the findings of the court thereon for that reason erroneous. The order entered upon the petition was merely interlocutory and was subject to be modified or vacated by the court at any time before the entry of the judgment of confirmation, but until so modified or set aside its findings upon questions of fact presented by the petition were binding upon the parties, and the court could not be required to re-try those questions at some subsequent stage of the proceedings, in the absence of a showing of some good cause why the objection was not interposed and the evidence presented at the hearing upon the petition.

In *Ahrens* v. *Drainage District, supra,* and *Vandalia Drainage District* v. *Hutchins, supra,* upon which appellants rely to support their contention that an objection to the assessment on the ground that it is levied to pay past indebtedness could, under the former statute, have been interposed upon the application for confirmation of the as-

sessment roll, the fact that the assessment included a certain sum for the payment of past indebtedness appeared from the face of the petition, and it required only an inspection of the record in order to disclose the error of the court in granting the prayer of the petition. A consideration of the objection to the confirmation of the assessment on that ground did not require a rehearing upon a question of fact that had been determined adversely to the objectors at the hearing upon the petition, and it was the duty of the court to correct the error apparent on the face of the record, upon the application of any person injured thereby, at any time prior to the entry of the final judgment confirming the assessment roll. An objection to the confirmation of the assessment roll based upon such error constituted such application, and the action of the court in overruling the objection was held in each of the cases cited by appellants erroneous.

The appellant railroad companies had no right, under the statute in force when the petition was filed, to re-try the question whether the assessment was levied to pay past indebtedness upon objection to the confirmation of the assessment roll, and the court committed no error in denying the motions to set aside the order granting the prayer and for a rehearing upon the petition.

*Eighth*—After the entry of the order of July 15, 1909, vacating that portion of the order of March 31, 1909, directing the commissioners to make the additional assessment, setting aside the assessment roll made and returned by them and directing the clerk to cause a jury to be drawn, the appellant railroad companies entered their respective motions to dismiss the proceedings as to them, on the ground that the court, on June 18, 1909, having sustained objections interposed by them to the assessment roll made by the commissioners on account of the interest of the commissioners in a portion of the lands assessed for benefits, was without jurisdiction to further proceed in the matter

against the objectors. These motions were denied, and the
action of the court thereon is urged as cause for reversal.
The only reason pointed out by appellants why these mo-
tions should have been granted is, as they contend, that we
held in *Commissioners of Drainage District* v. *Daily*, 239
Ill. 428, that when the county court sustains objections to
an assessment roll made by commissioners on account of
the interest of the commissioners in a portion of the lands
included in the assessment roll, it can make no further or-
der under the original petition for the assessment of the
lands of the objectors. While certain language used in
that case, when considered alone, furnishes support for the
appellants' contention, it was only applicable to the facts
disclosed by the record then before us, and must not be
regarded as announcing a general rule that after sustaining
objections to an assessment roll the court can make no fur-
ther order for the assessment of the lands of objectors. In
the *Daily case* the county court ordered the commissioners
to make the additional assessment of benefits in lieu of a
jury, and in the same order provided for a jury to spread
the assessment upon the lands of all the land owners who
might, on any ground, object to the assessment roll to be
made by the commissioners. Upon the filing of the com-
missioners' assessment roll certain land owners interposed
objections, which were confessed by the petitioner, and the
court quashed the assessment roll as to the objectors, con-
firmed it as to all other land owners and ordered a jury
empaneled to spread the assessment upon the lands of the
objectors. As applied to that state of facts, the statement
that when the court sustained the objections to the com-
missioners' assessment roll "it could make no further order,
under the original petition in this proceeding, for the as-
sessment of said lands of said objectors," was only in-
tended as a determination that when the court ordered the
commissioners of the district to make the assessment of
benefits in lieu of a jury and confirmed the commissioners'

assessment roll as to a portion of the lands, it was without power to then empanel a jury to spread the assessment on the remainder of the lands, and this for the obvious reason that the assessment was, under the statute, an entirety and the whole of it was required to be spread by the same body of men, and there was no provision in the statute authorizing a portion of the assessment to be spread by the commissioners and the balance by a jury. In the case at bar, however, the assessment roll made by the commissioners was set aside as to all the lands and the entire assessment was made by a jury. The *Daily case* is not authority for appellants' contention that the county court was without authority to order a jury empaneled to spread the whole assessment, after sustaining their objections to the assessments against their lands and vacating and setting aside the assessments against all the remaining lands in the district, and there was no error in the action of the court in denying their motions to dismiss the proceedings.

*Ninth*—When the commissioners' second roll of assessments of benefits was offered in evidence upon the hearing before the jury, appellants objected to its admission upon the ground that each of the commissioners owned land within the district and that the assessment roll showed an assessment against such land. The objection was overruled and appellants complain of this action of the court. We have recently, in the case of *Meredosia Lake Drainage District* v. *Evemeyer,* 244 Ill. 115, considered this same objection when interposed to an assessment made under the Levee act as amended in 1909, and there decided it adversely to appellants' contention. Appellants' argument against the correctness of that decision has not led us to change our views as therein expressed.

*Tenth*—It is next contended that the court erred in confirming the assessment because certain property within the district benefited by the improvement was not assessed. The property alleged to be liable to assessment and which

was omitted consists of a street railway passing through
the drainage district over and upon a street and public high-
way known as Cass street, gas pipes laid within the streets
and highways within the district belonging to a private
corporation, and poles, wires and fixtures of certain tele-
graph, telephone and electric light companies placed upon
the streets and highways within the district. A portion of
Cass street which is within the drainage district is within
the city of Joliet and a portion is outside the city. It was
stipulated upon the trial that the Chicago and Joliet Trac-
tion Company was operating the street railway upon that
portion of Cass street which is within the city of Joliet
under a franchise from the city, and on that part of Cass
street which is outside the limits of the city under a fran-
chise from the proper officials. Appellants then sought to
show that the traction, gas, telegraph, telephone and electric
light companies would receive benefits from the work of
the drainage district, but the court refused to permit such
proof, and this ruling is assigned as error.

No case has been called to our attention, and we are
aware of none, where this court has passed on the liability
of a street railway company to a special assessment by a
drainage district. By an amendment of the constitution of
1870, which was adopted at the November election, 1878,
it was provided as follows: "The General Assembly may
pass laws permitting the owners of lands to construct
drains, ditches and levees for agricultural, sanitary or min-
ing purposes, across the lands of others, and provide for
the organization of drainage districts and vest the corpo-
rate authorities thereof, with power to construct and main-
tain levees, drains and ditches, and to keep in repair all
drains, ditches and levees heretofore constructed under the
laws of this State, by special assessments upon the property
benefited thereby." It will be observed that by this constitu-
tional provision the legislature authorized the organization

of drainage districts for the construction and maintenance
of levees, drains and ditches by special assessments upon
the property benefited thereby. In pursuance of this con-
stitutional provision numerous drainage laws have been
passed by the legislature. It will also be noted that the
legislature is not limited by the constitution to special as-
sessments for drainage purposes upon land or real estate.
The constitution authorizes special assessments upon "prop-
erty" benefited.

Two questions are involved in the assignment of error
now under consideration: (1) Is the right to occupy a
public street with a street railroad, together with its ties,
rails and rolling stock, "property" within the meaning of
the constitutional provision above quoted? (2) If it is
such property, does the law under which this drainage dis-
trict was organized authorize and require that its property
shall be assessed its due proportion of the cost of the im-
provement according to the benefits to be derived therefrom
by such street railway?

Section 9 of article 9 of the constitution of 1870 au-
thorizes the General Assembly to vest the corporate authori-
ties of cities, towns and villages with power to make local
improvements by special assessment or by special taxation
of "contiguous property," or otherwise. Said section of the
constitution provides that "such taxes shall be uniform in
respect to persons and property, within the jurisdiction of
the body imposing the same." In order to make the con-
stitutional provision last above quoted available, the legisla-
ture has from time to time enacted local improvement acts
providing for the making of local improvements by special
assessments upon contiguous property benefited thereby. In
the case of *Cicero and Proviso Street Railway Co.* v. *City
of Chicago,* 176 Ill. 501, this court had before it the ques-
tion whether the right of way of a street railway company,
together with its right of user and occupancy of a street,
constitutes property of a fixed and immovable character,

which may be assessed for the local improvement of the street upon which it is located, the same as other property. In that case the previous decisions of the court bearing upon the question were reviewed, and the conclusion reached was, that where a street railway company, under a contract with the city for a term of years, laid its tracks in a public street and was in the possession and operation of a line of street railway, this franchise and its right of occupancy together constituted a property fixed and immovable in its character, like realty, and recognized and protected by the law as fully as a fee simple in land; that this property is of a character to be substantially and directly benefited by the proposed improvement, and that in proportion as it is thus benefited it should contribute to the cost of the improvement in common with other property upon the street. The cases of *City of Chicago* v. *Baer,* 41 Ill. 306, *Parmelee* v. *City of Chicago,* 60 id. 267, *Chicago City Railway Co.* v. *City of Chicago,* 90 id. 573, *Kuehner* v. *City of Freeport,* 143 id. 92, and *Lightner* v. *City of Peoria,* 150 id. 80, all of which bear, more or less directly, upon the question under consideration, were reviewed by this court, and the doctrine of those cases was re-affirmed in the *Cicero Railway Co. case.* These authorities establish the proposition beyond controversy that a street railway located upon a street of a municipality is "contiguous property" within the meaning of section 9 of article 9 of the constitution and the local improvement statutes passed in pursuance thereof, and as such is liable to a special assessment for a local improvement upon such street. The words "contiguous property," found in article 9 of the constitution, and the word "property," found in section 31 of article 4 above quoted, refer to the same class of property. In other words, any property that may be made liable for a special assessment for a local improvement by a city may be made liable by the legislature for a special assessment under a drainage statute. The authority of the legislature is as broad in the one case as in

the other. By analogy to the rule established by this court in reference to the special assessment of street railways for local improvements made by a municipality, we are forced to the conclusion that a street railway, in the enjoyment of the same franchises and property rights within a drainage district, may also be subject to a special assessment for its proportionate share of the cost of a drainage improvement. There are no reasonable grounds for distinguishing between the power of the legislature in regard to the two classes of local improvements.

The second inquiry is, Has the legislature, by the enactment of the statute under which the appellee was organized, exercised its constitutional power by authorizing drainage districts to assess a street railway for a local improvement made by such district?

Appellee is organized under what is known as the Levee act, passed in 1879. As originally enacted this act clearly contemplated an assessment for benefits against lands. This intention appears from the general scope of the act as well as from numerous special provisions relating to the assessment of "lands benefited" and the methods provided for the collection of such assessments. In 1885 section 55 of the Levee act was amended so as to authorize the assessment of the property of "any public or corporate road or railroad" whenever the proposed improvement was so constructed as to "benefit any of such roads so that the roadbed or traveled track or other property of such road will be improved by the construction of said ditch, drain or levee," and the act authorized the commissioners to apportion to the county, State or free turnpike road, to the township for a township road, to the company for a corporate road or railroad, such portions of the cost and expense thereof as to private individuals, etc. The act as amended also provided for the adjustment, by an agreement of the commissioners with the owners of the several classes of property referred to, of the amount that they, or any of

them, should contribute to the improvement. The said section as amended also provided that the amount so assessed against any such company or private corporation, upon the confirmation of the assessment roll of the county court, should become a lien upon the real property of such railroad company or private corporation and have the same force and effect as a judgment at law in favor of such district against such railroad company or private corporation, and that execution may issue thereon in the same manner as executions issue from other courts of record, and that it shall be a lien upon personal property. In 1909 said section 55 was again so amended as to include streets and alleys of municipal corporations. At the same time section 55 was amended, a new section was enacted, which is section 34½, which provides that the act shall be liberally construed in furtherance of the objects sought to be accomplished thereby.

Under the constitution of 1848 it was held in the case of *City of Chicago* v. *Baer, supra,* that the principle of equality and uniformity, in taxation applies to special assessments for local improvements the same as to general taxation. Article 9 of the constitution of 1870, in relation to local improvements, seems to omit the requirements of equality and uniformity in reference to local improvements, and this court held in the case of *Murphy* v. *People,* 120 Ill. 234, that it was not essential to the validity of the special assessment that the principle of uniformity and equality should be observed. Section 31 of article 4 of the constitution of 1870, which authorized the legislature to pass laws permitting the organization of drainage districts for agricultural, sanitary and mining purposes, provides that the cost of such improvements shall be paid "by special assessments upon the property benefited thereby." This section of the constitution clearly authorizes, if it does not absolutely require, that all the property within the boundaries of the drainage district shall be assessed its just share of the

benefits to be derived from the improvements· made. The general principle of equality of burdens in governmental matters is so eminently just and equitable that it appeals to the intelligence of every enlightened person. Conceding the power of the legislature to disregard this fundamental principle of taxation, it will not be inferred that there was an intention to discriminate between owners of similar property which shares equally in benefits unless the legislative intention to do so is clearly expressed. The legislature had the power, under the constitution, to provide that all property benefited by the work of a drainage district within the limits of the district should bear its just proportion of the burdens.

Prior to the amendment of 1885 nothing but land could be specially assessed under the Levee act. In view of the state of the law as it then stood, section 55 above referred to was enacted for the purpose of bringing within the taxing power of the drainage district certain other classes of property which prior to that time were not liable to assessment. While "street railways," as, such, are not specifically named in amended section 55, still "railroads" and roads, road-bed, free turnpike, township road and corporate road are all named as subject to special assessment. The word "railroad" is not a technical word. Ordinarily it is understood to apply to a commercial railroad operated by steam power upon rails, but it may mean, and often does include, a street railroad as well as a commercial road. No valid reason could be assigned for levying a special assessment against a steam railroad within a drainage district and at the same time exempting a street railway which, through a reduction in the cost of maintenance or otherwise, was equally benefited, from a like burden. We are of the opinion that, under the liberal construction which the legislature has enjoined upon us to give to the Levee act, the street railway was liable to assessment for its just share of the benefits to be derived from the work of this district.

Appellants offered to prove that the street railway would receive benefits from the work of this district. This evidence was rejected by the court and an exception preserved. We are not concerned with the amount of benefits that would be received nor with the basis upon which they are to be assessed. The court having excluded all evidence tending to show the benefits to the street railway, those questions did not arise. It must be assumed that the street railway would receive some benefits, but, whether small or large, the court erred in refusing an inquiry into this question.

It is said by appellee that even if it be conceded that certain property which was liable to assessment was omitted, that is no reason for reversing the order of confirmation. To this we cannot assent. Every tax-payer whose property is specially assessed is injured by the omission of other property that is liable. The effect of bringing in such omitted property will be to reduce the rate upon all other property of the district. In reference to the telegraph, telephone, electric light and gas companies whose property was not assessed, our conclusion is that there is no language in the Levee act which makes the property of these companies liable for the special assessment.

Appellants contend that section 55 of the Levee act, as amended May 29, 1909, is unconstitutional because it makes the judgment of confirmation a lien upon all the real estate owned by a railroad company and does not limit the lien to the property assessed, and because it authorizes an execution to issue upon such judgment which may be satisfied out of any property, real or personal, belonging to the company. This objection, so far as it applies to the second proviso of section 55, is well taken. That part of the proviso which attempts to create a lien upon all the property of the railroad company and authorize an execution to issue which may be levied upon any property belonging to the corporation is unconstitutional and void. The owner of

lands within a drainage district derives no benefit from the improvement except in so far as the lands within the district are benefited by the same, and the constitution only authorizes the General Assembly to provide for the construction and maintenance of drainage ditches by special assessment upon the property benefited.   Special assessments made on account of supposed benefits cannot· be made a personal liability of the owners of property against which the assessments are made.· (*Craw* v. *Village of Tolono,* 96 Ill. 255.)   The invalidity of this proviso, however, does not affect the rest of said section.   The assessments against railroad property may still be enforced in the same manner that they are collected from other property.

The appellants also criticise sections 17*b* and 18 of the amended act because the first of said sections provides that the jury, which is required by section 17*a* to be empaneled according to the provisions of section 6 of the Eminent Domain act, shall examine the lands in charge of a "foreman" to be elected by the jury instead of in charge of a sworn officer of the court, and because the jury are authorized and directed by both of said sections to ascertain, "to the best of their ability and judgment," the benefits which will accrue to the lands, etc., instead of being required to base their verdict upon the law and the evidence in the case.   Appellants do not point out wherein the provisions of which complaint is made violate any provision of the constitution of this State, but rely wholly upon certain language used in the opinion in the case of *Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310. What was said in that case referred solely to former provisions of the Levee act relating to the assessment of damages, which were held to violate section 13 of article 2 and section 14 of article 11 of the constitution of 1870.   Those sections relate exclusively to the taking or damaging of private property for public use.   They contain no limitation upon the power of the legislature to provide methods for

ascertaining the benefits to property assessed for drainage or other local improvements.  Sections 17b and 18 of the Levee act, in so far as they provide a method for ascertaining benefits where no question of damages is involved, can not, therefore, be held to contravene the sections of the constitution above referred to, and hence the decision in *Wabash Railroad Co.* v. *Coon Run Drainage District, supra,* can have no bearing upon the validity or invalidity of those sections of the statute.

Section 17a provides for the empaneling of a jury in accordance with the provisions of section 6 of the Eminent Domain act, but does not provide that the subsequent proceedings shall be in accordance with the provisions of that act, as appellants seem to assume.  It gives all persons interested the same right of challenge of jurors as in other civil cases in county courts, and provides that the jury shall be sworn.  It gives to all parties to the proceeding the right to present to the jury their case in person or by counsel and offer any competent evidence as to benefits or damages, and provides that after the evidence has been presented and arguments of counsel heard, the court shall instruct the jury as to the law and the form of their verdict.  After the evidence has been heard and the instructions given, the jury are required to examine the land, and in making up their verdict they are required to take into consideration their view of the premises as evidence and consider it with the other testimony offered in the case and allowed by the court. The criticism made by appellants that the statute merely provides for the form and not for the substance of a jury trial, even if that were a valid objection to the statute as applied to an assessment of benefits, is manifestly without merit.

Appellants also contend that section 17b is null and void because it requires the jury to return a verdict which "shall produce the total sum of the estimated cost of the proposed work and the proceedings incident to the same," the objec-

tion to this provision being that the jury are thereby required to assess an arbitrary sum, regardless of benefits. The validity of this section depends upon the sense in which the word "shall" is used. Where such a construction is rendered necessary by the evident intention of the legislature, the word "shall," when used in a statute where no right or benefit to anyone depends upon its imperative use, may be held to be directory, merely, and by legislative intention to be used synonymously with the word "may." (*Wheeler* v. *City of Chicago*, 24 Ill. 105; *Canal Comrs.* v. *Sanitary District*, 184 id. 597.) As it violates no rights and sacrifices no benefits by being so construed, it is apparent that the word "shall," as here used, should be construed to be directory, merely, and not mandatory. An inspection of the whole act clearly discloses that it was the intent of the legislature to provide that while in no case should any tract of land be assessed in a greater amount than it would be benefited by the proposed work, or in a greater amount than its proportionate share of the estimated cost of the work and expenses, the jury might, if the facts warranted them in so doing, return a verdict which should produce the total sum of the estimated cost of the proposed work and the proceedings incident to the same. The provisions of this act limit the assessment against each tract to the benefits such tract will derive from the improvement, and it is only in cases where the benefits to the lands in the district shall equal or exceed the estimated cost of the proposed work and the proceedings incident thereto, that the jury are authorized to return a verdict which shall produce the total sum of the estimated cost of the work.

*Eleventh*—The appellants complain of the action of the court, upon the hearing before the jury, in refusing to permit them to show that the drainage district had not obtained permission from the highway commissioners to construct its ditch and walls in and upon a certain highway in the town of Joliet, this being a portion of the work to be

paid for out of the additional assessment. In this ruling of the court there was no error as against the appellants. Whether the district had obtained permission to use the highway was a question which only concerned the town of Joliet. (*Iroquois Drainage District* v. *Harroun,* 222 Ill. 489.) Appellants cannot complain of rulings which only affect other parties to the proceeding.

*Twelfth*—Each of the appellant railroad companies contends that the benefits to its lands from the drainage system, when completed, will not exceed the amount of the original assessment against such lands, and that the verdict of the jury finding that the lands of each of the railroad companies would receive benefits in excess of the original assessment is contrary to and unsupported by the evidence. The city also contends that the streets and alleys within the district will not be benefited to the amount assessed against them, or in any amount. At the hearing before the jury upon the question of benefits the district presented the commissioners' second roll of assessments of benefits, which, by virtue of the provisions of the statute, made out a *prima facie* case for the district. Appellants then introduced their evidence tending to show that their lands and the streets and alleys would not be benefited in excess of the amounts theretofore assessed against them, and the district, in rebuttal, offered evidence tending to show that the lands of the railroad companies and the streets and alleys of the city would be benefited at least as much as the total of the original and additional assessments against them. After hearing this testimony and being instructed by the court as to the law applicable to the assessment of benefits, the jury viewed the premises and saw the conditions surrounding and affecting the lands of the railroad companies and the streets and alleys of the city. They were required by the statute to take into consideration their view of the premises as evidence and consider it with the other testimony in the case in finding their verdict. The mere fact that the

evidence of the witnesses which has been preserved in the record now before us preponderates in favor of the appellants does not warrant us in reversing the judgment of the county court. The rule in this class of cases should be at least as favorable in support of the verdict of the jury as in cases of eminent domain where the jury view the premises, and in the latter class of cases it is well established that the verdict will not be disturbed, on appeal, on the ground that it is contrary to the evidence, where the jury viewed the premises, the evidence was conflicting, and the verdict is within the range of the testimony and does not appear to have been the result of passion or prejudice. *Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547; *Spohr* v. *City of Chicago,* 206 id. 441; *Martin* v. *Chicago and Milwaukee Electric Railroad Co.* 220 id. 97; *Pullman Co.* v. *City of Chicago,* 224 id. 248.

While there are differences of opinion as to particular questions discussed in this opinion, the views expressed herein as to each question are concurred in by a majority.

Appellants call attention in their brief to some other matters, but none of them appear to be of sufficient importance to require special discussion.

For the error pointed out in the tenth division of this opinion the judgment of the county court will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. CHIEF JUSTICE VICKERS, specially concurring:

I concur in the conclusion reached in the majority opinion but I do not agree with the opinion wherein it is held that that portion of section 55 which makes the judgment of confirmation a general judgment against the property of the railroad company upon which execution may issue is unconstitutional. In the case of *County of McLean* v. *City of Bloomington,* 106 Ill. 209, this court had under consid-

eration the liability of the county for a special assessment levied against the court house square. The argument was there made that the particular property could not be sold for the non-payment of such assessment, and that therefore it was not within the contemplation of the legislature that such property should be liable for such special assessment; that because of the public character of the ownership it could not be charged with such assessment. In disposing of that question this court, speaking through Mr. Justice Scholfield, on page 215, said: "The remaining objection, we think, involves no serious difficulty, though at first blush it may seem to do so. We certainly do not hold the court house square may be sold and the title passed to private parties or to the city. In *Taylor* v. *People ex rel.* 66 Ill. 322, we held, explaining *Scammon* v. *City of Chicago,* 42 Ill. 192, that in such cases the amount should be paid out of the treasury. Should this not be done, *mandamus* would lie to compel it. (*City of Olney* v. *Harvey,* 50 Ill. 453.) And it seems that the judgment at law must precede the *mandamus,* the latter being in the nature of process of execution of the former.—*People ex rel.* v. *Board of Supervisors,* 50 Ill. 213." The court in the above case also disposes of the objection that no personal charge can be enforced against the owner on account of a special assessment but that it must be collected from the property itself. The distinction between an individual owner and the owner of public property is there pointed out, and the holding is made that the only way of enforcing a special assessment against a municipality is by rendering a general judgment against it. I think the power of the legislature is as broad in respect to railroad property as it is in regard to the property of municipal corporations. It may be true that more public inconvenience would result if special assessments against municipal corporations could only be collected by a sale of the specific property benefited than in cases where the assessment was against the property of a railroad com-

pany.   The difference in this regard is only as to the extent of the inconvenience.   It is well known that railroad property is not valued at so much a mile and it is never sold on that basis.   The whole property of the corporation is regarded as a single property.   The benefit to a railroad company from a local improvement is measured, not by the increase in the cash value of the particular section or portion contiguous to the improvement, but by the reduction in the expense of maintenance, which necessarily benefits one portion of the corporate property as well as another. I think that it was within the power of the legislature to provide for the collection of a drainage tax in the manner provided by section 55, and that it would be better, both for the public and the corporations, to enforce the statute as made. ·

COOKE, FARMER and DUNN, JJ., dissenting:

We do not concur in that part of the tenth division of the majority opinion which holds that the property of the street railway company is liable to assessment for benefits and should be assessed.   We concur in all other portions of the opinion.

A portion of Cass street within the drainage district is within the city of Joliet and a portion without.   It was stipulated upon the trial that the Chicago and Joliet Traction Company was operating the street railway on that portion of Cass street which is within the city of Joliet under a franchise from the city, and on that portion of Cass street which is without the city under a franchise from the proper public officials.   Appellants then sought to show that the traction, gas, telegraph, telephone and electric light companies were receiving benefits from the work of the drainage district and that no assessment had been made against them, but the court refused to permit such proof.   In this there was no error.   These companies owned no land in the district, and there is no provision in the statute authorizing

an assessment against the franchises of such companies or the poles, wires and fixtures placed in public highways and used in operation of their business.

Appellants' principal complaint in this regard is the refusal of the court to permit them to show that the street railway was and would be benefited by the work of the district. A street railway, by laying its rails in the streets under a franchise, acquires no estate or interest in the soil. (27 Am. & Eng. Ency. of Law,—2d ed.—31.) In *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 Ill. 255, we said: "The permission to a street railway company to lay its tracks in a street already appropriated to public use is not the grant of a right to appropriate an additional easement in the soil of the street, but the construction of the street railroad is merely a mode of facilitating existing travel and of modifying or changing the existing public use." And in the same case it was further said: "The interest of the street railway company, although a valuable one, is a part of the easement of the public in the street. It is carved out of such easement. It is accessory and ancillary to the existing right, vested in the public, of passing over the street. By the granting of it no new easement is imposed upon the property of the owner of the fee, but the old easement, to which such property was already subject, is merely changed so as to be adapted to an improved mode of passage." The principles thus announced have been since approved and followed in numerous cases, among which are *Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510, and *Wilder* v. *Aurora, DeKalb and Rockford Electric Traction Co.* 216 id. 493. So far as the drainage district is concerned, when it made an assessment against the city of Joliet on account of benefits to the streets and alleys in the district and an assessment against the town of Joliet on account of benefits to the public highways without the city, those assessments included the benefits which persons and corporations using

the streets would derive from the improved condition of those streets and highways for travel, and such persons or corporations should no more be held liable to pay for the benefits to the streets than the abutting property owners. The statute permits the assessment of benefits against lands of the districts, only. As the street railway owned no land within the district no benefits could properly be assessed against it.

For the reasons stated, we are of the opinion that the judgment of the county court should be affirmed.