## SELMA WERTHEIMER AND FIDELITY TRUST COMPANY, CO-EXECUTORS, ESTATE OF MORRIS S. WERTHEIMER, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48006.   Promulgated October 23, 1934.

*Samuel Kaufman, Esq.*, for the petitioners.
*Thomas F. Callahan, Esq.*, for the respondent.

### OPINION.

GOODRICH: Respondent has determined against petitioners' decedent, Morris S. Wertheimer, a deficiency in income tax for 1926 in the amount of $4,943.60. At trial he admitted error in including capital gains of $10,924.06 in Wertheimer's income for 1926. Accordingly, upon settlement, that item will be eliminated from income as disclosed by the deficiency notice.

Of the issues raised by the pleadings, two remain for our decision—first, whether Wertheimer sustained a loss of $53,445.60, de-

ductible from his income for 1926, upon liquidation of his stock of A. Guckenheimer & Bros. Co.; and, second, whether Wertheimer, as a beneficiary of a trust, may deduct from his income for 1926 the amount of $19,973.85, being his pro rata share of a loss claimed to have been sustained by the trust upon its disposition of shares in the same Guckenheimer Co. To some extent, the issues are related, for both Wertheimer and the trust of which he was a beneficiary disposed of their shares in the same transaction. It is for us now to determine whether that transaction gave rise to a loss deductible from income in 1926.

The facts are not in dispute. The case was submitted upon an agreed statement of counsel, which, together with the several stipulations on the trial record, we adopt as our findings of fact. For the purposes of this report, a briefer statement will suffice.

On June 17, 1921, Morris Wertheimer owned 801 shares of stock of the A. Guckenheimer & Bros. Co., a Pennsylvania corporation; the estate of his father, Samuel, owned 3,303 shares. The cost of Morris' stock is unknown and undeterminable and the parties agreed that we may assume the cost to be the same as its March 1, 1913, value, which was $84.30 a share. Samuel Wertheimer died on May 3, 1915, leaving his stock, then worth $57.24 a share, in trust upon certain conditions which were subsequently fulfilled, so that in June 1921 Morris had a one-seventh interest therein.

On June 17, 1921, the company had 14,403 shares outstanding. On that day it purchased from its stockholders ratably 2,876 shares of its own stock, paying therefor $229,260 in cash, and property to the value of $69,706.56, or a total of $298,966.56. Of Morris' shares, 160 were thus redeemed, leaving him 641, and of the estate's shares, 660 were redeemed, leaving 2,643.

On the same day all of the stockholders of the Guckenheimer Co., including Morris and the estate of Samuel Wertheimer, transferred to three trustees all of the cash and properties received by them in purchase of their shares and the 11,527 shares of the company still outstanding. At the same time the company transferred to the trustees $101,530.12 which represented a reserve for payment of its liabilities exclusive of Federal income and profits taxes.

These transfers were made in connection with the consummation of a sale of all of the stock of the company to outside interests, and under a trust agreement between the stockholders and the trustees, the purpose of which was to assure, as the proposed purchasers demanded, the payment of all existing liabilities of the company. The trustees were unrestricted as to the sale of the stock, and the agreement provided that they should hold the funds from the sale, as well

as the funds transferred to them by the old stockholders, to invest and reinvest; to discharge all liabilities of the corporation, including state and Federal tax liabilities; to pay over the income of the fund pro rata to the beneficiaries; and ultimately to distribute any residue after all liabilities had been met. Accounting by the trustees was waived by the old stockholders until all the liabilities had been settled and paid, and they agreed to accept as final and conclusive all acts of the trustees done in the administration of the trust.

In another agreement between the trustees for the stockholders and the proposed purchasers, also under date of June 17, 1921, the trustees agreed to sell and the purchasers to buy the 11,527 shares of stock of the Guckenheimer corporation then outstanding; the trustees agreed to pay all liabilities of the corporation, including Federal and state tax liabilities, for all periods up to and including June 30, 1921; and to hold the purchase price and make no distribution to their *cestui que trustent* until all the corporation's debts had been discharged. The agreement provided further that the trustees could conduct any proceedings or litigation pertaining to the determination, assessment, reassessment, and restatement of Federal or state taxes in the name of the corporation, and in the event the corporation should receive any amount as a refund or credit on account of any Federal or state taxes levied or assessed for any period prior to June 30, 1921, the purchasers would cause the corporation to pay over to the trustees such refund or credit, and if the corporation failed to pay the amount of any refund or credit to the trustees, the purchasers agreed to pay over or transfer such amount to them.

That same day, June 17, 1921, the trustees sold all the stock for $492,779.25 in cash or its equivalent. In January 1926 they made payment of respondent's final determination of the company's income and profits tax liability for the four fiscal years ending June 30, 1921, a matter which had been in dispute continuously since 1922. The trustees annually filed tax returns during the period of administration, including the year 1926, but had reported neither profit nor loss upon their sale of the stock in 1921.

On January 21, 1926, the trustees had on hand $589,355.05 and had paid all the liabilities of the company. They then distributed pro rata to the beneficiaries, the old stockholders, $480,000. Of this distribution Morris received $26,654.40, and his father's estate received $110,112, Morris' share thereof being $10,924.06. The trustees and the beneficiaries agreed that an attempt should be made to secure a refund of the amount paid the Government in discharge of its claim against the company for taxes and that the balance of the funds should be retained by the trustees to meet the expenses incident

thereto. Subsequently, the trustees brought suit for refund, upon which decision was handed down by the trial court in *A. Guckenheimer & Bros.* v. *Heiner*, U. S. District Court, Western District of Pennsylvania, May 12, 1934.

Petitioners claim a deduction of $53,445.60 from the 1926 income of their decedent as a loss sustained upon liquidation of his Guckenheimer stock and also a deduction of $19,973.85 as Morris' share of the loss similarly sustained by his father's estate. As we see it, that is a misstatement of the issue. There was no liquidation of stock in 1926, for that was sold in 1921. If petitioners are entitled to any deduction for a loss sustained in 1926, it is on the theory that the trust was terminated in that year and petitioners' decedent then received, either actually or constructively, his pro rata share of the trust corpus which was less than the amount of his contribution to the original trust fund.

Respondent denies the claimed loss upon the grounds that the trust was in fact a mere selling agency; that the sale of the stock was a closed and completed transaction in 1921, and that the loss, if any, was sustained then, and not in 1926. Petitioners contend that the agreement created a valid trust; that neither gain nor loss was sustained by the stockholders in 1921 upon either the creation of the trust or the sale of the stock by the trustees; that the trust was terminated in 1926 and a loss then sustained, being the difference between the amount distributed and the basis of their interest in the trust corpus.

In our view of the case, we need not decide whether the trust agreement created a selling agency or a valid, continuing trust, nor need we pass on the 1921 transaction. Even assuming, as petitioners contend, that a valid trust was created and that, upon its termination, petitioners may deduct any loss sustained, still no deductible loss was sustained in 1926, for the trust was not then terminated.

In 1921, when the trust was created, petitioner's decedent and the other stockholders of the Guckenheimer Corporation transferred cash and stock to the trustees for an interest in the trust fund after the settlement and payment of the corporation's liabilities then existing. In January 1926 these liabilities had all been paid, and it is petitioners' contention that this event fixed the termination of the trust and entitled them to a loss deduction. But the distribution made in 1926 was not the final distribution and accounting. The trustees, authorized by the beneficiaries, retained a large sum of money, over $100,000, to finance an attempt to secure a refund of Federal taxes.

This agreement by the beneficiaries to postpone complete distribution did not create a new trust. The pursuit of a refund did not

occasion any fundamental change in the duties imposed on the trustees by the provisions of the original trust indenture to *settle* and pay the liabilities of the Guckenheimer Corporation. Equity implies such powers in trustees as are reasonably necessary to the discharge of the duties assigned by the instrument creating the trust. *Mills* v. *Connor*, 135 N. E. 616; 104 Ohio St. 409. The power to institute proceedings for a refund may therefore be implied from the duty conferred on the trustees to settle liabilities. The Federal tax liability was not " settled " by the *payment* of the amount demanded by the Commissioner, for the former stockholders, through their trustees, still disputed his determination. Perhaps it is not yet settled, notwithstanding the decision of the trial court.

However that may be, it is evident that the trust, either as created by the original trust indenture, or as later orally extended[1] by the beneficiaries, was continued beyond the year 1926. Its complete liquidation was postponed, and there was no final distribution and accounting in that year. In order for the loss claimed by petitioners to be deductible, it must be evidenced by a closed and completed transaction. *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398; *Mastin* v. *Commissioner*, 28 Fed. (2d) 748, affirming 7 B. T. A. 72; *Brewster* v. *Orr*, 19 Fed. (2d) 230; *Deeds* v. *Commissioner*, 47 Fed. (2d) 695, affirming 14 B. T. A. 1140; *Reese Blizzard*, 16 B. T. A. 242; *Whitney Realty Co., Ltd.*, 29 B. T. A. 453. There was no such transaction in 1926; respondent was not in error in denying the deductions claimed.

What we have said applies as well to the loss claimed to have been sustained by the trust estate of Samuel Wertheimer, in which Morris had a one-seventh interest. Respondent's denial of the deduction of Morris' proportion of that loss was correct for a further reason. It is well settled that losses upon property held in trust are deductible, if at all, by the trust estates, and not in proportionate shares by the beneficiaries thereof. *T. Rosslyn Beatty*, 28 B. T. A. 1286; *George W. Balkwill*, 25 B. T. A. 1147; *Henri Chouteau*, 22 B. T. A. 850; *Estate of William H. Hotchkiss*, 16 B. T. A. 1334; *Cora S. Stern*, 14 B. T. A. 444.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

[1] As to modification of a trust agreement by consent of all parties in interest, see 65 C. J. 340.