PARK CHAMBERLAIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88067. Promulgated January 5, 1940.

*Park Chamberlain, Esq.*, and *Joseph H. Horan, Esq.*, for the petitioner.

*S. U. Hiken, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined a deficiency in petitioner's income tax for the year 1934 in the amount of $1,865.68. The sole question is whether or not petitioner is entitled to the deduction from gross income of $8,497.34 as an ordinary loss.

The petitioner duly filed his return of income for the calendar year 1934 with the collector for the first district of Illinois. At that time he was a resident of Chicago, Illinois, though previously he had been a practicing lawyer at, and a resident of, Anamosa, Jones County, Iowa.

During the year 1919 and the early part of the year 1920 petitioner, his brother, William Chamberlain, and Don Barnes purchased several farms in the State of Iowa. The transactions were entered into for profit, it being contemplated that the farms would be sold at a profit.

William Chamberlain and Don Barnes were law partners and residents of Linn County, Iowa. Linn County adjoins Jones County, in which petitioner resided. Nine farms, most of them in Jones County, were purchased at an aggregate agreed purchase price of approximately $365,000. Of this amount about $100,000 was paid in cash, the balance being evidenced by purchase money mortgages. Petitioner and his associates each contributed one-third of the amount paid in cash. The farms were purchased on contract for delivery on March 1, 1920. The vendor of one farm refused to convey and the contract was never completed. Title to seven of the farms was taken in petitioner's name and title to one was taken in Barnes' name. The parties agreed that each was to have a one-third interest in all the farms; that title might be held in the name of any of them; that the one holding title held it in trust for the others in the proportion of one-third each; and that if any of the parties incurred or paid any liability in connection with the farms he would be indemnified by the others to the extent of their proportionate interests. The parties did not file partnership returns of income, but each included in his gross income for the various years his share of the profits and deducted his proportion of the losses sustained.

After the execution of the contracts for the purchase of the farms, efforts were made to sell them. No real estate office was maintained and no real estate salesmen were employed to sell the properties, but they were advertised in some newspapers from 1920 to about 1923. They were listed for sale with various real estate agents and petitioner and his associates personally made some effort to sell them. Of the eight farms acquired in 1920, only one was sold. The sale resulted in a profit and petitioner included $2,000, his proportion, in his return of income for that year. This farm was reacquired by petitioner and his associates in 1926, when the purchaser defaulted on a

mortgage which they held; so at the end of 1926 petitioner and his associates still owned the same eight farms which they had acquired in 1920. The farms were rented until such time as they could be sold. The titles to the farms remained in the names of petitioner and Barnes until the maturity of the purchase money mortgages, when it became necessary to refund the indebtedness. At that time petitioner conveyed a two-thirds interest in all of the farms standing in his name to William Chamberlain and Don Barnes.

One of the farms which was in the petitioner's name was known as the McNamara farm, which had been purchased at a cost of $51,170. A purchase money mortgage had been given by petitioner upon this farm in the amount of $33,670 when it was acquired. This mortgage was paid in full when it became due on March 1, 1925, and at the same time, on March 1, 1925, a new mortgage was placed on the farm in the amount of $20,000, due March 1, 1930. Petitioner and his associates joined in the execution of this note and mortgage. On March 31, 1925, petitioner and his wife conveyed by quitclaim deed an undivided two-thirds interest in this farm to Don Barnes and William Chamberlain, the deed being recorded April 21, 1925. The mortgage on this farm was renewed on March 1, 1930, for a further term of five years.

In 1927 William Chamberlain terminated his law partnership with Barnes and left the State of Iowa. He conveyed his undivided interest in all of the farms to petitioner in consideration of petitioner assuming his share of all indebtedness upon them.

In 1930 certain creditors of petitioner attempted to garnishee his earnings as a lawyer. Petitioner, being apprehensive that they might attempt to attach his interest in the farms, on June 23, 1930, executed a quitclaim deed to Don Barnes of all his interest in them. This deed was recorded on June 28, 1930. It recited that:

\* \* \* the Grantors for divers good causes and considerations thereunto moving, and especially for the sum of One Dollar and other valuable considerations ($1.00) received to my [our] full satisfaction of Don Barnes of Cedar Rapids, Iowa, the Grantee, have given, granted, remised, released and forever quitclaimed, and do by these presents absolutely give, grant, remise, release and forever quit claim unto the said grantee, his heirs, and assigns forever, all such right and title as I [we] the said grantor[s], have or ought to have in the following described pieces or parcels of land, \* \* \*. [The McNamara farm being among the parcels described.]

After the execution of the above deed petitioner continued to assist. in the management of the farms and continued in his efforts to sell them. He left Iowa in 1931, moving to New York. He continued to maintain his office in Jones County, Iowa, until the early part of 1934 and, at least for several months after he left, the accounts in connection with the farms were handled at that office.

In 1933 petitioner became unable to make his share of the payments coming due on the farms. Foreclosure was threatened on the mortgages because of default in the payment of interest and efforts were made to deed the farms to the mortgagees. Two mortgagees accepted deeds but the remainder refused. In 1933 William Chamberlain and Don Barnes took over two farms each, petitioner executing and delivering quitclaim deeds to them. They then executed new mortgages upon these farms.

The only farm in which petitioner had any interest after 1933 was the McNamara farm. In the early part of 1934 the mortgage on this farm was placed in the hands of an attorney for foreclosure because of nonpayment of interest. Some effort was made to get the mortgagee to accept a deed for it, but without success. On December 28, 1934, petitioner and his wife executed and delivered to Barnes a quitclaim deed conveying all of their right, title, and interest in the McNamara farm. This deed was never recorded. It recited in part as follows:

* * * for and in consideration of the sum of One Dollar and other good and valuable consideration, in hand paid by the said party of the second part [Don Barnes], the receipt whereof is hereby acknowledged, do hereby convey, remise, release, and forever Quit Claim unto the second party, his heirs and assigns forever the [real estate thereafter described].

Barnes took over the McNamara farm in 1934 because he felt that he might be able to handle it better and save himself some ultimate loss upon it. He paid petitioner nothing for the quitclaim deed. The mortgage on the farm was renewed March 1, 1935. In a subsequent settlement between William Chamberlain and Don Barnes, William was given an undivided one-half interest in the farm and in 1937 the mortgage was paid off by William and Barnes and they still owned the farm at the time of the hearing.

In his return of income for the taxable year petitioner computed his loss on the McNamara farm as follows:

| | |
|---|---|
| Purchase price | $51,170.00 |
| Additions | 844.02 |
| | 52,014.02 |
| Less depreciation taken | 6,522.00 |
| | 45,492.02 |
| Less mortgage | 20,000.00 |
| Total loss to petitioner and his associates | $25,492.02 |
| One-third loss | $8,497.34 |

The respondent disallowed the claimed loss, stating in his notice of deficiency:

(a) The capital loss in the amount of $8,497.34 representing your share of the excess of cost over mortgage liability on farm property has been disallowed.

This transaction represents an exchange of an equity in property for the assumption of liability by another and, therefore, falls within the provisions of section 117 of the Revenue Act of 1934, and the total loss under this section is limited to $2,000.00. Since you have already availed yourself of the maximum deduction of $2,000.00 for losses on other transactions, the entire amount of $8,497.34 has been disallowed.

Petitioner contends that the respondent erred in disallowing the claimed loss; that notwithstanding the recitals in the deed of June 23, 1930, he continued to have an interest in the McNamara farm until the execution and delivery of the quitclaim deed on December 28, 1934; that such interest had then become worthless; that he was unable to make the necessary payments to avoid foreclosure of the mortgage; that he deeded it to Barnes, without consideration, for the purpose of enabling Barnes to handle it in such a way as to save himself from loss; that the execution of said deed terminated the joint venture and resulted in a loss to him of the amount claimed in his return; and that, since he neither sold nor exchanged a capital asset, the deduction should be allowed as an ordinary loss.

Respondent, though he determined the deficiency upon the theory that the loss was a capital loss because "the transaction represents an exchange of an equity in property for the assumption of liability", now contends that the proof has shown the loss was actually sustained in 1930; that, if we did not err in receiving evidence tending to show that the 1930 deed was executed purely for the purpose of vesting legal title in Barnes so that petitioner's creditors could not attach it, nevertheless it must be held that the 1934 transaction was a "sale or exchange" of a capital asset; and that in any event he committed no error in disallowing the claimed loss, for the evidence shows that petitioner made a "gift" of his interest in the farm to his coadventurer, Barnes.

There seems to be no controversy between the parties as to the cost of the McNamara farm. The evidence indicates that petitioner paid his aliquot portion of the agreed purchase price, the amount paid upon the mortgage in 1925 and the improvements placed upon the farm. It therefore appears that the purchase of this farm resulted in an ultimate loss to petitioner of the amount claimed in his return, and we so hold.

The respondent's argument that the loss was sustained in 1930 is not convincing. The evidence clearly indicates that it was not the intention of the grantors to convey, nor of the grantees to acquire, petitioner's equitable interest in the farms. Petitioner had been interested in some Iowa banks which had not survived the depression. A substantial judgment had been rendered against him as a stockholder. Efforts had been made to garnishee his earnings and he was apprehensive that an attachment might be made of his real estate.

He accordingly conveyed the legal title to his coadventurer, relying upon the agreement then in force that, regardless of the holding of the legal title, each remained the equitable owner of an undivided interest.

Respondent contends that the evidence upon which this conclusion is based was improperly received, citing *Pugh* v. *Commissioner*, 49 Fed. (2d) 76; certiorari denied, 284 U. S. 642; *MacDonald* v. *Commissioner*, 76 Fed. (2d) 513; *Lindlay* v. *Raydure*, 239 Fed. 928; affd., 249 Fed. 675; certiorari denied, 247 U. S. 513, and other court and Board decisions; but, notwithstanding such misgivings as we had at the hearing, we now think that the ruling admitting the evidence was correct. The present controversy is between a party to the instrument and a stranger. "The courts are practically unanimous that the rule admitting parol evidence to vary written contracts applies only in actions in which a stranger is a party." Jones on Evidence, Third Edition, sec. 449, and cases cited. This is clearly the law in Iowa, where the property in question is located, as expounded by the highest court in that state. *In re Shields Brothers*, 134 Iowa, 559; *Dilenbeck* v. *Herrold*, 183 Iowa, 264; *Aultman Engine & Thresher Co.* v. *Greenlee*, 134 Iowa, 368; *Nissen* v. *Sabin*, 202 Iowa, 1362. Cf. *Peugh* v. *Davis*, 96 U. S. 332; *Valdes* v. *Central Altagracia*, 225 U. S. 58; *J. W. Solof*, 1 B. T. A. 776, 785; *James D. Boone*, 27 B. T. A. 1064, 1067, and cases cited. If the question is one of substantive law, as the parties inferentially suggest, and actually is, as petitioner argues, whether under the law of Iowa he had an equitable title which he could assert, then the ruling was proper; but so was it under the statute prescribing that our proceedings "shall be conducted * *. * in accordance with the rules of evidence applicable in courts of equity of the District of Columbia." Sec. 907 (a), Revenue Act of 1926. We hold, therefore, that petitioner remained the equitable owner of an aliquot part of the McNamara farm, notwithstanding the execution and delivery of the deed of June 23, 1930.

We are of the opinion that the respondent is correct in holding that petitioner's interest in the McNamara farm constituted a capital asset as such term is defined in section 117 (b) of the Revenue Act of 1934, which is as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

\* \* \* \* \* \* \*

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

If petitioner sold or exchanged it the loss is limited as provided in 117 (d) and respondent must be upheld in his determination. Our question, therefore, is, first, was there a sale or exchange; and, if we held that there was not, then did petitioner merely make a "gift" of his interest in the farm to Barnes?

It is perhaps unnecessary to refer at any length to decisions under cases somewhat analogous. It may be pointed out, however, that in *Commonwealth, Inc.*, 36 B. T. A. 850, we held that where an owner of property, subject to a mortgage which it had not assumed, chose to deed it to the mortgagee without consideration, it thereby sustained an ordinary loss. In several cases it has been held that where owners of property have lost their equities through foreclosure of mortgages, ordinary losses, rather than capital losses, were sustained. *Commissioner* v. *Freihofer*, 102 Fed. (2d) 787, affirming *Sol Greisler*, 37 B. T. A. 542; *C. Griffith Warfield*, 38 B. T. A. 907; and *Nebraska Bridge Supply & Lumber Co.*, 40 B. T. A. 40. Recently we held that owners who abandoned real estate to a mortgagee when they "fully realized that their equity was completely and permanently lost," thereby sustained an ordinary loss. *W. W. Hoffman*, 40 B. T. A. 459. This conclusion, we felt, was justified and required if a practical, rather than a legal, test be applied. *Lucas* v. *American Code Co.*, 280 U. S. 445. See also *Sherwin A. Hill, Administrator*, 40 B. T. A. 376. We have not hesitated to apply the statute literally under facts justifying such application. *Betty Rogers*, 37 B. T. A. 897, affd., 103 Fed. (2d) 790; certiorari denied, 308 U. S. 580; rehearing denied, 308 U. S. 635; *James R. Stewart*, 39 B. T. A. 87; *Morris Polin*, 39 B. T. A. 951, (on appeal, 3 C. C. A., 3d Cir.). But we are of the opinion that the facts before us do not come within that category.

If only the language of the quitclaim deed of December 28, 1934, be considered, it would seem that a sale was made by petitioner of his interest in the McNamara farm for $1. But we can not ignore the evidence. Both petitioner and the grantee testified positively that no consideration was paid, demanded, or expected in connection with the execution and delivery of this deed. The evidence also discloses that petitioner did not make the transfer of his interest in the property in consideration of the assumption of the mortgage indebtedness by Barnes. We are satisfied, therefore, that petitioner did not make a sale or exchange of a capital asset, and hold that the deduction of any loss sustained by him is not limited by the provisions of section 117 of the Revenue Act of 1934.

There remains for our consideration respondent's alternative contention that petitioner made a gift. Technically, it might be said that this contention is not without merit. The evidence convinces us, how-

ever, that petitioner never had any intention of making a gift in the true sense. He and his coadventurer, Barnes, attempted without success to surrender their interest in the property to the mortgagee in consideration for a release of their liability under the mortgage. The mortgagee, however, apparently felt as they did—i. e., that the property was not worth the face amount of the mortgage. It therefore refused to accept a deed and release them from liability under the mortgage. Petitioner then prevailed upon Barnes to take over his interest. In making the transfer to Barnes we are satisfied that petitioner was not actuated by any motive of generosity. He thought, and not without reason, that his interest was worthless. "Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration." *Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754.

"In the field of taxation, administrators of the laws and the courts are concerned with substance and realities * * *." *Helvering* v. *Lazarus & Co.*, 308 U. S. 252. The substance of the transaction shown in our findings, we think, was an abandonment by petitioner of what he, and all who were familiar with it, thought was a worthless asset. *W. W. Hoffman, supra*. This resulted in a loss to him of his entire investment in the McNamara farm. The purchase having been a "transaction entered into for profit," we hold that the loss is deductible under section 23 (e) (2) of the Revenue Act of 1934.

While all the contentions of the respective parties upon brief have been discussed, it is questionable if any issue is raised by the pleadings save the narrow one whether an ordinary or a capital loss was sustained. In this connection it may be pointed out that the only errors alleged in the petition—except the general one that the Commissioner "erred in finding that there was any deficiency"—are that the Commissioner erred in finding the transaction falls within section 117; in finding that there was any assumption of liability by another; and in failing to find that the loss was incurred in business and hence deductible under section 23 (e). The answer was a general denial. Our decision, however, is the same that it would have been had the evidence been confined strictly to the issues raised by the pleadings.

The respondent erred in determining the deficiency.

*Decision will be entered for the petitioner.*