*Decision will be entered under Rule 50.*

JOHN J. SEERLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97673. Promulgated December 10, 1940.

*James J. Magner, Esq.*, and *L. S. Davis, C. P. A.*, for the petitioner.
*E. G. Sievers, Esq.*, for the respondent.

54

OPINION.

HARRON: The basic questions are whether petitioner sustained the loss of his investment in his Carroll County lands in the taxable year, and, if so, whether the loss was an ordinary loss deductible in full or a capital loss subject to the limitations of section 117 (d) of the Revenue Act of 1934.

On his income tax return for the taxable year petitioner took a deduction of $168,162.56 as the loss of his investment in his Carroll County lands. Respondent reduced the amount of the deduction to $2,000 on the ground that the loss was a capital loss subject to the limitations of section 117 (d) of the Revenue Act of 1934. In an amended answer respondent alleged that petitioner did not sustain the loss of his investment in his Carroll County lands in the taxable year and asserted a claim for an increased deficiency.

In order to be deductible, losses, in general, must be fixed by identifiable events, *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398; and, as a rule, must be evidenced by closed and completed transactions, *Ewing-Thomas Converting Co.* v. *McCaughn*, 43 Fed. (2d) 503; certiorari denied, 282 U. S. 897; *Louisville Trust Co.* v. *Glenn*, 33 Fed. Supp. 403; *John C. Shaffer*, 28 B. T. A. 1294; and must be sustained during the taxable period for which allowed. Regulations 86, art. 23 (e)–1. Identifiable events have been defined as incidents or occurrences which point to or indicate a loss. *Industrial Rayon Corporation* v. *Commissioner*, 94 Fed. (2d) 383. In order to be deductible, losses must be complete either through worthlessness or through a final disposition. *United States* v. *Sentinel Oil Co.*, 109

Fed. (2d) 854. See Paul & Mertens, Law of Federal Income Taxation, vol. 2, sec. 17.15. In determining whether losses are deductible, substance, and not mere form, governs. *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898.

The question of whether petitioner sustained a loss in 1935 or in another year of his investment in his Carroll County lands will be considered first with respect to his investment in the 580 acres of land which he conveyed to the three banks and then with respect to his investment in the 1,871 acres of land which he transferred to the trustee of the Carroll Farms trust. Since respondent first raised the question relating to the year in which the loss was sustained in his amended answer, he has the burden of proving that petitioner did not sustain the loss of his invesment in his Carroll County lands in the taxable year. Cf. *Berkshire Cotton Manufacturing Co.*, 5 B. T. A. 1231.

First, with respect to the loss of petitioner's investment in the 580 acres of land which he conveyed in 1932 to the three banks in satisfaction of his personal indebtedness to the banks, there can be no doubt but that the loss was sustained in 1932, or prior to the taxable year. In his briefs petitioner does not seriously contend otherwise. Since petitioner sustained the loss of his investment in the 580 acres of land, which he conveyed to the three banks, in 1932, he is not entitled to deduct such loss in the taxable year.

With respect to the loss of petitioner's investment in the 1,871 acres of land which he transferred in 1932 to the trustee of the Carroll Farms trust, respondent argues that such transfer to the trustee constituted a closed and completed transaction, i. e., a final disposition, which fixed petitioner's loss in 1932, or prior to the taxable year. With respect to the effect to be given to petitioner's execution and delivery in the taxable year of the order directing the trust managers to issue the certificates of interest to W. W. Speer, respondent contends that that did not constitute a closed and completed transaction which fixed the loss in the taxable year because petitioner executed and delivered the order as a gift to W. W. Speer, and, further, because the certificates of interest actually were not issued to W. W. Speer until 1937, or subsequent to the taxable year. On the other hand, petitioner argues that the transfer of the 1,871 acres of land to the trustee did not constitute a closed and completed transaction which fixed the loss in 1932, or prior to the taxable year, and that petitioner's execution and delivery in the taxable year of the order directing the trust managers to issue the certificates of interest to W. W. Speer did constitute a final disposition which fixed the loss in the taxable year. The burden of proof is upon respondent with respect to all of the contentions set forth above.

The transfer by petitioner of the title to the 1,871 acres of land to the trustee of the Carroll Farms trust in 1932 did not constitute a closed and completed transaction which fixed the loss of petitioner's investment in that land in 1932, or prior to the taxable year. The transfer of the title to the 1,871 acres of land to the trustee was not a final disposition. The trustee was to sell the land and to distribute the net proceeds to the beneficiaries of the trust. After the transfer of the title to the land to the trustee, the interests of both petitioner and the bondholders were substantially the same as prior to the transfer, even though under the trust agreement the interests of both petitioner and the bondholders were stated to be *in personam* and not *in rem*. Only the form in which the interests were evidenced was different; the bondholders received bonds of the trust in the place of bonds of the drainage district, and petitioner was entitled to receive certificates of interest of the trust in the place of his equity interest in the land. Moreover, petitioner received no consideration whatsoever for the transfer of the title to the land to the trustee. It is true that in connection with the transfer of the title to the land to the trustee, the drainage assessments levied against all of petitioner's lands were released. However, the release of the drainage assessments was of no benefit to petitioner because he was not personally liable for the drainage assessments. *Spring Creek Drainage District v. Elgin, J. & E. Ry. Co.*, 249 Ill. 260; 94 N. E. 529. In as much as there was in fact no consideration to the petitioner, the transfer of the title to the land to the trustee was not a sale or exchange. In the final analysis, the trustee of the Carroll Farms trust was a mere liquidating agent for the bondholders of the drainage district and petitioner. That both the bondholders of the drainage district and petitioner intended that the trustee was to be a mere liquidating agent is shown clearly by the terms of the proposal which petitioner submitted to the bondholders and which the bondholders accepted. In that proposal petitioner repeatedly referred to the creation of an *agency*, "corporate, trustee, or otherwise", to which he would transfer the title to the land. Obviously the transfer of the title to the 1,871 acres of land to a mere liquidating agent did not constitute a closed and completed transaction which fixed petitioner's loss of his investment in that land in 1932, or prior to the taxable year. Cf. *Whitney Realty Co., Ltd.*, 29 B. T. A. 453; affd., 80 Fed. (2d) 429; certiorari denied, 298 U. S. 668; and see *North Jersey Title Insurance Co.* v. *Commissioner, supra*. Even if the Carroll Farms trust were regarded as a separate entity, the trust unquestionably would be a liquidating trust. *Helvering* v. *Washburn*, 99 Fed. (2d) 478; *Broadway-Brompton Buildings Liquidation Trust*, 34 B. T. A. 1089; *Dolese & Shepherd*

*Co.*, 30 B. T. A. 1171; and the transfer of the title to the land to the trustee would not constitute a final disposition which would fix the loss of petitioner's investment in the land in 1932. Cf. *Selma Wertheimer et al., Coexecutors*, 31 B. T. A. 407; *William J. Snyder*, 11 B. T. A. 807; and see G. C. M. 8098, C. B. IX–1, p. 195; Sol. Op. 149, C. B. II–1, p. 20. And even if the Carroll Farms trust were regarded as an association, as distinguished from a liquidating trust, there would be some foundation for holding that any loss sustained by petitioner on the transfer of title to the land to the trustee should not be recognized under section 112 (b) (5) of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin,[1] because, after the transfer, petitioner and the bondholders were substantially in control of the association and the interests of petitioner and the bondholders in the association were substantially in proportion to their respective interests in the land prior to the transfer. Cf. *Edwin L. Dana*, 36 B. T. A. 231. The conclusion that the transfer of the title to the land to the trustee did not constitute a closed and completed transaction is entirely consistent with the conclusion, in a somewhat analogous situation, that a taxpayer whose land has been sold either for taxes or on foreclosure does not sustain a loss of his investment in his land until the redemption period has expired. *T. J. Bosquett*, 39 B. T. A. 763; *Derby Realty Corporation*, 35 B. T. A. 335; *Frederick Krauss*, 30 B. T. A. 62; *J. C. Hawkins*, 34 B. T. A. 918; and see *Nickoll* v. *Commissioner*, 103 Fed. (2d) 619.

It should be emphasized that the record clearly shows that the purpose of creating the Carroll Farms trust and conveying to it in 1932 the 1,871 acres of land was the sale and liquidation of the land. That the trustee managed and operated the land while attempting to make a sale thereof does not detract from the essential character of the trust as a liquidating trust. *Broadway-Brompton Buildings Liquidation Trust, supra.* The activities of the trustee were all reasonably necessary to and consistent with the accomplishment of the purpose to sell and liquidate the land. As the Board stated at page 1093 in *Broadway-Brompton Buildings Liquidation Trust*, "The law does not require that in liquidating a property the owner must abandon all ordinary business judgment and sacrifice the property immediately without

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*    \*    \*    \*    \*    \*    \*

(b) EXCHANGES SOLELY IN KIND.—

\*    \*    \*    \*    \*    \*    \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

regard for conditions of the market or amount of loss." Without doubt the period from 1932 to 1935 was not a period generally when a sale of the land in question could readily be made except at a great sacrifice.

The execution and delivery by petitioner in the taxable year of the order directing the trust managers to issue the certificates of interest to W. W. Speer constituted a closed and completed transaction which fixed petitioner's loss of his investment in the 1,871 acres of land in the taxable year. By an order executed and delivered by petitioner on January 29, 1935, petitioner directed the trust managers to issue to Speer a certificate or certifiates "covering the equity interest in the lands owned by Carroll Farms." The record is not clear as to whether the certificate or certificates to be issued to Speer represented the equity interest of petitioner alone or the equity interest of petitioner and others. However that may be, the only reasonable inference to be drawn from all the evidence is that the execution and delivery of the order constituted, in substance, an abandonment by petitioner of his equity interest in the 1,871 acres of land. *Park Chamberlain*, 41 B. T. A. 10; *Commonwealth, Inc.*, 36 B. T. A. 850. Petitioner testified that by the execution and delivery of the order he intended to relinquish his equity interest in the 1,871 acres of land. It is true that petitioner did not receive any consideration from W. W. Speer for the execution and delivery of the order. However, the record does not show that petitioner had any intention of making a gift of the certificates of interest to W. W. Speer. The record shows that petitioner executed and delivered the order to Speer only because Speer urged him to do so and only because petitioner thought that it was the "fair thing" to do in view of Speer's large advances to finance the organization of the bondholders' committee and the Carroll Farms trust. Thus respondent's argument that the execution and delivery of the order was a gift to Speer is entirely without foundation. *Park Chamberlain, supra.* The mere fact that the trust managers did not issue the certificates of interest to Speer until more than two years after petitioner's execution and delivery of the order does not make the execution and delivery of the order any less an abandonment by petitioner of his equity interest in the 1,871 acres of land. The abandonment by petitioner of his equity interest in the 1,871 acres of land constituted a final disposition which fixed the loss of his investment in that land in the taxable year. *Park Chamberlain, supra; Commonwealth, Inc., supra.*

Petitioner originally purchased his Carroll County lands with the hope of realizing a profit on their resale. Thus the loss of his investment in the 1,871 acres of land which he transferred to the trustee of the Carroll Farms trust was a loss incurred in a transaction entered into for profit, deductible under section 23 (e) (2), the pertinent pro-

visions of which are set forth in the margin.[2]  *Park Chamberlain,* *supra.*

While petitioner's equity interest in the 1,871 acres of land which he transferred to the trustee of the Carroll Farms trust constituted a capital asset within the meaning of section 117 (b) of the Revenue Act of 1934, petitioner did not sustain the loss of his investment in that land from a sale or exchange of his equity interest but from the abandonment thereof.  Thus the loss of petitioner's investment in the 1,871 acres of land which he transferred to the trustee of the Carroll Farms trust was an ordinary loss, deductible in full, and not a capital loss subject to the limitations of section 117 (d) of the Revenue Act of 1934, the pertinent provisions of which are set forth in the margin.[3]  *Park Chamberlain, supra; Commonwealth, Inc., supra.*

Section 23 (h) of the Revenue Act of 1934 provides that the "basis for determining the amount of deduction for losses sustained, to be allowed under subsection (e)  *  *  *, shall be the adjusted basis provided in section 113 (b) for determining the loss from the sale or other disposition of property."  The parties have stipulated in effect that the adjusted basis of petitioner's entire 2,451 acres of Carroll County land was $168,162.56.  The record shows that the cost, i. e., the unadjusted basis, of the 580 acres of land which petitioner conveyed to the three banks was $70,000.  However, there is nothing in the record to show either the adjusted basis of the 580 acres of land which petitioner conveyed to the three banks or the adjusted basis of the 1,871 acres of land which petitioner transferred to the trustee of the Carroll Farms trust.  While the adjusted basis of the 580 acres of land undoubtedly was less than $70,000, petitioner apparently concedes in his reply brief that for present purposes the adjusted basis of the 580 acres of land was $70,000.  On the basis of this concession, the adjusted basis of the 1,871 acres of land which petitioner transferred to the trustee of the Carroll Farms trust was no less than $98,162.56, or $168,162.56 (the adjusted basis of the entire 2,451 acres) less $70,000 (the adjusted basis of the 580 acres).  Therefore, petitioner is entitled to deduct in the taxable year $98,162.56 as the loss of his investment in the 1,871 acres of land which he transferred to the trustee of the Carroll Farms trust.

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
   In computing net income there shall be allowed as deductions :
   *          *          *          *          *          *          *
   (e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
   *          *          *          *          *          *          *
   (2) if incurred in any transaction entered into for profit, though not connected with the trade or business.

[3] SEC. 117. CAPITAL GAINS AND LOSSES.
   *          *          *          *          *          *          *
   (d) LIMITATION ON CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges.  *  *  *

On his income tax return for the taxable year petitioner took a deduction of $168,162.56 as the loss of his investment in the entire 2,451 acres of land. The return showed a net loss of $116,272.62. Thus, after the reduction of the amount of the deduction from $168,162.56 to $98,162.56, the return will still show a net loss. In this situation recomputation under Rule 50 is unnecessary. There is no deficiency in income tax liability.

*Decision will be entered for the petitioner.*