EMMETT J. McCARTHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101607. Promulgated May 6, 1941.

*Raymond A. Duggan*, *C. P. A.*, for the petitioner.
*Gerald W. Brooks*, *Esq.*, for the respondent.

420

**OPINION.**

Murdock: The petitioner realized in 1936 that the value of this property had declined until it was less than the amount of the mortgage. He knew that the property would not produce enough income to pay the carrying charges. He concluded that he had lost forever the amount which he had already invested in the property and he believed that he would probably have additional loss on account of the mortgage notes. He desired to terminate the transaction in so far as he could do so for income tax purposes, to fix his loss up to that time, and to obtain the benefit of a deduction on his income tax return of the amount of that loss. He executed the instrument of February 6, 1936, to evidence his abandonment of the property and he now contends that he thereby absolutely and completely abandoned every interest which he had in the property from which he might ever possibly recoup any of his loss as represented by his cash outlay up to that time. The respondent has not pointed to any flaw in this argument or to any distinction between this case and that of *Park Chamberlain*, 41 B. T. A. 10. We hold, following that case, that the petitioner is entitled to a deduction for loss on the property. Cf. *John J. Seerley*, 43 B. T. A. 50.

This is so despite the obvious fact that by reason of the mortgage notes the petitioner still had a liability in connection with this property and could not be unconcerned as to what happened to it. This circumstance was present in the case of *Park Chamberlain, supra,* and it would also be present in a case where the owner of property

on which he had given a mortgage accompanied by his bond sold it at a loss, subject to the mortgage. Obviously, the seller in the hypothetical case would be entitled to deduct his loss at the time of the sale, even though he might sustain further loss by reason of his personal liability for the debt.

The petitioner contributed $19,400.24 of his money, whereas McCabe contributed only $7,287.91 of his money to the purchase and improvement of the property itself. However, there was an agreement between McCabe and the petitioner that McCabe would reimburse the petitioner until their investments were equal. McCabe had reimbursed the petitioner to the extent of $6,100 up to February 6, 1936. But thereafter he still recognized his obligation to make further payments and actually paid to the petitioner $2,917.21. The record is not entirely clear as to the purpose of the last payment of $2,417.21, but we must assume that it was like the rest, since the petitioner knew the facts and should have proved them if they were to his advantage. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. These payments reduced the cash payments by the petitioner to $10,383.03 and his loss must be limited to this amount, since the record does not show that on February 6, 1936, his loss was any greater than his total cash outlay less the amounts which McCabe was to pay back to him.

The petitioner received no consideration for the instrument of February 6, 1936, and the transaction was not a sale or exchange. *Polin* v. *Commissioner*, 114 Fed. (2d) 174; *Commonwealth, Inc.*, 36 B. T. A. 850; *Warner G. Baird*, 42 B. T. A. 970.

The Commissioner has raised an affirmative issue and has the burden of proof on that issue. He says that he erred in allowing the petitioner a personal exemption of $2,500 as head of a family and should have allowed him a personal exemption of only $1,000 as an unmarried person. The record shows that the petitioner had maintained a home for his father, his brothers, and sisters for a number of years and continued to maintain this home during the taxable year even though his father had died in the preceding year. Two brothers and two sisters lived with him in that home during the taxable year. They were all over 18 years of age, the youngest being 23. They contributed nothing towards the expenses of the family home and the petitioner paid all of those expenses during the taxable year. The statute does not define the head of a family, but the definition given by the Commissioner in his Regulations 94, article 25–4, is "an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship * * * and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation." These persons were

closely connected with the petitioner by blood relationship. He actually supported and maintained them in one household. His one brother was crippled, his one sister was in poor health, and we do not know anything about his other sister. The Commissioner, in determining the deficiency, allowed the petitioner a credit of $400 for one dependent person. The record as a whole does not justify the conclusion that the petitioner was not the head of a family within the meaning of the statute during that year. The determination of the Commissioner on this point will not be disturbed.

*Decision will be entered under Rule 50.*